(34 South. 434.)

No. 14,470.

TEAL v. McKNIGHT.*

(Feb. 16, 1903.)

PRINCIPAL AND AGENT—SALE—COMPLETION.

1. An agency for finding a purchaser for a thing terminates with the sale of the thing, and thereafter there exists no relation of principal and agent.

2. It makes no difference that the agent himself has become the purchaser, if with the full knowledge of the principal and in good faith.

3. The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser, with regard to the seller, as soon as there exists an agreement for the object and the price thereof, although the object has not yet been delivered nor the price paid.

(Syllabus by the Court.)

---

*Rehearing denied May 14, 1903.

Appeal from Judicial District Court, Parish of Grant; W. F. Blackman, Judge.

Action by Charles H. Teal against George H. McKnight. Judgment for plaintiff, and defendant appeals. Reversed.

William Cullen Roberts and William Butler Clarke, for appellant. White & Thornton, for appellee.

PROVOSTY, J. The plaintiff, C. H. Teal, employed the defendant, G. H. McKnight, to find a purchaser for him for a plantation which he desired to sell, agreeing to pay him a commission of $250 for his services. It was a plantation of well-defined boundaries. It had been surveyed and found to contain 198 and a fraction acres, and was supposed to contain even less than that quantity. Plaintiff wanted $4,000 for the property, or, approximately, $20 per acre. In course of the conversation on the occasion of the employment of McKnight, this manner of computing the price was adverted to, and McKnight called attention to the fact that there had been caving along the front of the land, and that probably as much as 10 acres had gone into the river; and this led to a statement by Teal that the caving could not be so much as that, but that, no matter what it was, he wanted $4,000 for the place. This was in May. McKnight soon found in the person of M. E. Swafford a purchaser for one-half of the place, but could not procure a purchaser for the whole or for the other half. His good faith in trying to sell this other half at the price fixed by Teal cannot, under the evidence, be questioned. He bargained with one Dean Stewart, to whom he even offered more favorable terms. Not succeeding, he got his mother to join with him in buying this other half; and thereupon, in September, an agreement of sale was entered into, by which Teal bound himself to sell the plantation to Swafford and McKnight, and the latter to buy, at $4,000; the act of sale to be passed on the 1st of December, and possession to be delivered on the 1st of January following. In the description of the land in this agreement of sale there was no mention made of the number of acres contained in the place. The agreement stipulated that title was to be made to each of the purchasers separately to such portions

110 LA.—9

of the place as they might designate. The understanding between Swafford and McKnight was that they were to partition the place, each taking half, and that they would take the title from Teal each for his specific half. In order to make this partition and establish the boundary line between the two halves, McKnight, who is a surveyor by profession, made a survey of the land on the 1st—2d of December, and found that instead of 198 and a fraction acres the place contained 248 and a fraction acres, or 50 acres more than was supposed. He said nothing of this to Teal, but let the acts of sale be passed according to the agreement. The acts were accordingly duly passed on the 5th of January. Teal says that just before signing the acts he inquired of McKnight what had been the result of the survey, and that McKnight answered, "About like you said, captain;" but McKnight denies this. When the greater acreage of the place became known, which was in the month of March following, the vendor of Teal, Mrs. Calhoun, called upon him to account to her for the value of this difference in acreage, she having sold to him by the acre at so much per acre. He refused, and a suit followed, which ended in his having to pay $1,096. He now brings this suit for the value of 50 acres of land at $20 per acre, and for the rent of the land, and to recover back the commission paid to McKnight, and for damages, alleging that McKnight was his agent for the purpose of selling the land at the time the discovery of the greater acreage was made, and was in duty bound as agent to impart the information to his principal, and that by failure in this duty he laid himself liable for the loss resulting to the principal; and that, had he known of this greater acreage, he would not have executed the acts of sale—in other words, would not have carried out the agreement of sale.

Suffice to say that he would have had to. By textual provision of our Rev. Civ. Code, art. 2456, "the sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid." No one could or does say that under the facts of the case,

and under the terms of the agreement to sell, the sale was not a sale per aversionem. No one can say the agreement was not entered into in perfect good faith. From the moment of the agreement, therefore, the property became McKnight and Swafford's, and thereafter McKnight was not the agent of plaintiff, and owed him no duty.

Teal's case appeals very strongly to the court. He was made to account to his vendor for the 50 acres, and cannot recoup himself by coming against his vendee; but the court is powerless to help him. As contracts are made, so they must be enforced. His purchase was by the acre, and his sale was per aversionem.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the plaintiff's suit be dismissed, with costs in both courts.