LE BLANC, Justice.
In this suit is involved the title to a certain triangular portion of ground located at the entrance to Bonnabel Place, a subdivision, in Metairie, Jefferson Parish, Louisiana.
*796 On December 16, 1952, plaintiff filed this proceeding alleging that it is the owner and in possession of the property in contest; that it acquired said property by act of sale dated September 22, 1952 from one Carlo J. Zummo; that the defendant, the Police Jury of Jefferson Parish, had claimed and was continuing to claim that the above property was dedicated as a public park in 1916 'by one Alfred Bonnabel, one of plaintiff’s ancestors in title; that no part of the property has ever been used as a public park; that the Sheriff of Jefferson Parish, acting under authority of defendant, on September 17, 1952, stopped said Carlo J. Zummo from doing construction work on said property, and that an actual controversy exists between plaintiff and defendant concerning the ownership of the property.
Plaintiff also alleges that on September 10, 1952, the defendant Police Jury adopted an ordinance claiming that the said property was dedicated as a public park and in the said ordinance instructed the District Attorney of Jefferson Parish to take action to protect its interest and prevent plaintiff from using it or otherwise exercising rights of ownership, and that so far no suit has been filed under said ordinance.
Plaintiff prayed for judgment declaring defendant’s claim to the property to be invalid; that plaintiff be decreed to be the owner thereof; and further declaring that neither the above property nor any part of it has ever been dedicated as a public park. In the alternative plaintiff alleged that should the Court hold that there was a dedir cation of the property as a public park, it then be declared that such dedication was only of a servitude for park purposes and that such servitude is now terminated by abandonment and by non-use through the liberative prescription of more than ten years. It prayed, in the alternative, accordingly.
Defendant in its answer averred that the property has become public property by reason of its dedication on maps or plans filed by Alfred E. Bonnabel, record owner at the time, setting out the subdivision of Bonnabel Place, on the basis of which maps all of the property in Bonnabel Place was sold to various owners. In answering further, defendant averred that sidewalks, sewerage disposal mains, drainage lines, gas mains, electric lines, and water mains have been constructed along and across said property, without protest on the part of the alleged owners, and that if said property is not public property, then it is subject to the numerous servitudes erected thereon, by the prescription of ten years.
Defendant prayed for the dismissal of plaintiff’s suit and for all general and equitable relief.
There was trial on the merits after which judgment was rendered in favor of plaintiff declaring it to be the owner of the property in controversy and, as such, entitled to the peaceful possession thereof, and denying defendant’s claim thereto. The lower court pointed out in its judgment that the servi *798 tudes of the various public utilities referred to in defendant’s answer were not at issue in the case' and that the same were not being passed upon in the judgment rendered.
Defendant was granted a suspensive and devolutive appeal to this Court and the case is now before us for decision.
We find it necessary to go into the history of the small tract of land that is involved in the suit.
' In 1915, Alfred Bonnabel was the owner of a large tract of land, situated in Metarie Ridge, Jefferson Parish, about one mile above the parish line separating the parishes of Orleans and Jefferson. Part of the property was in what was at one time designated as the town of Bath No. 1 and part also in Bath No. 2. The owner, Alfred Bonnabel, then conceived the idea of subdividing a part of the tract of land which he owned. In May, 1915, Alfred E. Bonnabel, the owner’s son, who' was Parish Surveyor, made a survey and plat of that part of the tract which was then known as Bath No. 1 and labelled it “Bonnabel Place”.. On the plat he laid out Boulevards and Streets, giving these their respective names, and also alleys and a school site. He also designated a portion by signs and symbols and this is what is now contended by defendant represented a public park.
On February 2, 1916, the Police Jury of Jefferson Parish met in special session for the purpose of considering the adoption of an ordinance revoking and setting aside the dedication of certain streets laid out within the limits of Bath No. 1, as shown on a map of Louis Bringier dated December 13, 1838. The revocation was petitioned for by Alfred 'Bonnabel, owner of the land. In lieu of the streets that had been dedicated by the prior owner in 1838, which streets had never been used, or if used, had been abandoned, Alfred Bonnabel offered to dedicate certain streets in the same tract of land, laid out on a map made by Henry L. Zander, Parish Engineer, which he presented with his petition. The plan by Zander was made on June 17, 1915. It referred to an original subdivision of Bath No. 1 (probably the one made in 1838) and showed that it represented a “re-subdivision” of the Bonnabel Place. It was, for the most part, the same as the Bonnabel plan of May 1915, although it did not show the alleys, which appeared on that plan nor did it show the triangular portion of ground in controversy. The triangular portion was not shown, evidently for the reason that it formed no part of Bath No. 1, but was part of adjacent Bath No. 2 also owned by Alfred Bonnabel. It is on the symbols appearing on the Bonnabel map with respect to the triangular tract of land that the defendant’s claim of dedication as a park is primarily based.
The Police Jury having given favorable consideration to the proposal of Alfred Bonnabel adopted an ordinance declaring *800 that-the; proposed streets designated on the map by; Louis Bringier in 1838 be closed,abandoned and no longer needed for public use, and in the same ordinance, approved the map of Henry L. Zander which accompanied Bonnabel’s - petition, and accepted - the streets therein designated and set aside for public use in lieu of the old streets.- which were closed under the same ordinance.
On June 9, 1916, Alfred Bonnabel, appeared before a Notary Public and, by authentic act, stated that as owner of Bonnabel . Place, and acting with the concurrence of the Police Jury under the ordinance of February 2, 1916, he had made a subdivision of said property and caused a map thereof,. duly approved by Alfred E. Bonnabel, Parish Surveyor, to be filed in the office of the Clerk of Court of said Parish, which map defines, names and delineates the boulevards and streets which he .has dedicated to public use, and that in order to confirm this dedication by public authentic act, he does dedicate the boulevards and streets delineated on said map by Alfred E. Bonnabel, Parish Surveyor. This confirmation differed somewhat from the dedication accepted in the ordinance in that it made no reference to the Zander plan, but rather referred to the Bonnabel plan of May, 1915, an original of which was attached to the petition; also it provided for an extention of Codifer Boulevard into Metarie Road as per sketch of Alfred .E. Bonnabel, of date June 7, 1916, also attached to the act. Codifer is a large boulevard immediately south of Bonnabel Place. This extension differed somewhat from that shown on the. Bonnabel plan of May, 1915. The sketch showed the triangular portion of ground in controversy, as it would be after Codifer Boulevard was extended, but did not show any sign or symbols thereon that would indicate in any way that it was' to be public property. On June 15, 1917, Alfred Bonnabel sold: to Alfred E. Bonnabel, his son, a portion' of ground in Bath No. 2 designated as Plot No., 1 on an annexed plan by A. C. Duval, civil engineer and surveyor, dated-June 5, 1917. Although it was not included in the title, the Duval survey includes the triangular portion of land and it appears on his plan .but it bears no marks or symbols of any kind.
, On April' 30, 1921, Alfred Bonnabel died. His Succession was duly opened and there was judgment recognizing his heirs and decreeing them as such, to be the owners of certain described property left by the decedent including the triangular property in controversy.
On May 18, 1922, Alfred E. Bonnabel surveyed and plotted the land he acquired from his father and although it was not included in his title, again on this map he showed the triangular portion of land marking it with symbols similar to those appearing on the former map he had made.’
At this point we break from the chronological order of events in order to refer *802 to a matter which is of considerable importance. It is in- connection with a statement that is found in the opinión in the case of Bonnabel v. Police Jury of Jefferson Parish, 216 La. 798, 44 So.2d 872, to the effect that in January 1915, Alfred Bonnabel conveyed to Johnson & Company, Inc., a right of way thirty feet in width, parallel and adjacent to Metarie' Road, over and across the triangular tract of land in controversy in this suit. The right of way was later. used by New Orleans Public Service, Inc. to lay its tracks and operate its railway over them. The railway service was discontinued in November 1939 and the New Orleans Public Service, Inc. transferred its rights in the property to the Police Jury. The object of the suit was to have the Succession of Bonnabel declared to be the owner of the thirty foot strip of land, the contention being that the grant made by Alfred Bonnabel was that'óf a servitude which had expired by non-use. The contention'was sustained on appeal to this Court and the Succession was declared to be the'owner of the property.
On June 18, 1924 the Police Jury, in regular session assembled, and on petition of property owners along Metarie Ridge, “resolved that 'the Parish Engineer be instructed to survey Codifer Avenue as per map of Bonnabel Place relative to dedication of a public park to be part of subdivision known as Codifer-Bonnabel Division, which park is now in private use. The Engineer to aid road superintendent to remove obstruction and restore said park to public, use as intended.”
On April 8, 1925 the Police Jury met and, as reflected by the minutes of that meeting, on the request of Mr. Alfred E. Bonnabel, “the jury granted permission to the Old Homestead, Inc., to establish an entrance from its property to Metarie Road.” (Bath No. 2 was also called Old Homestead.)
On April 19, 1926, the Police Jury adopted an ordinance providing that “whereas a public park had been set aside in the dedication of the Bonnabel Place Subdivision, and whereas it was in a neglected state of improvement, and for the purpose of improving same, the Parish Engineer is authorized to stake off said area, setting aside a sufficient portion for the building of a public Fire Engine House, the remaining portion to. be embellished for the Public Park.”
On April 13, 1927, the Police Jury leased the portion of ground in the Metarie Ridge section, Bonnabel Subdivision, fronting on Metarie Road, and dedicated on map of Bonnabel Land Company (obviously the triangular portion) to the Metarie Volunteer Fire Company No. 1 to be used for fire purposes.
On December 6, 1929, by act of partition between the heirs of Alfred Bonnabel, it was agreed that “whereas Alfred E. Bonnabel received his share (Plot No. 1) of a partition by his father, Alfred Bonnabel, of *804 a part of ‘Bath 1 and Bath 2, which at that time had been resurveyed by A. C. Duval into four plots, and whereas Codifer Boulevard was extended through the. front portion of Plot 1 to reach Metarie Road, and whereas, that left between Codifer Boulevard and Metarie Road a triangular portion of ground, forming portion of original Plot No. 1, A. E. Bonnabel is recognized as the sole and only owner of said triangular portion of ground.”
Later the heirs agreed that the triangular tract which Alfred E. Bonnabel owns includes the thirty foot strip of ground over which the car line ran, and that his land extended to Metarie Road. •
In July of 1952, after the death of Alfred E. Bonnabel, his widow and heirs were put into possession of the property left by him including the triangular portion of ground in controversy and on August 30, 1952, the widow and heirs of Alfred E. Bonnabel sold their respective interests in and to the triangular portion of ground to Carlo J. Zummo, plaintiff’s vendor.
Shortly thereafter on September 10, 1952 the Police Jury, at a meeting on that day, adopted the resolution which is made the subject of one of plaintiff’s allegations, to the effect that the District Attorney take the necessary action to protect the public’s interest in the property, which was never done.
It was after. the present plaintiffs had acquired the property from Zummo and was stopped by the Sheriff of Jefferson Parish-from doing some construction work on it that the present suit was filed.
The historical data herein recited is based on the documentary evidence found in the record. There was considerable oral testimony introduced also, a great deal of it relating to acts of possession by various owners of the property and part also to the recollection of some of the older witnesses to what use was ever made of the property by the public. We believe that the testimony definitely shows that at some time or other the owners exercised acts of possession without regard to any rights the public may have, had, by erecting fences around portions of the property and'also by excavating a ditch across part of it and by posting “No Trespassing” and “For Sale” signs on it.
The testimony also shows that the property was very low and formed the basin of a small bayou which ran across it, and that it was later filled by the dirt excavated from the roadbed of Metarie Road.
The testimony also indicates that people at times freely , walked over the property especially to reach the stopping place of the railway train when it was in operation; but certainly there is by no means a sufficiency of testimony on which to base' the conclusion that the property was ever regarded-as a public park.
As was stated before, the defendants claim of dedication as a park rested pria *806 cipally on the Alfred Bonnabel plan of May 1915 on which the triangular portion of ground was designated by certain symbols which, it is contended, definitely showed the intention of dedicating a public park and also on subsequent sales of lots in the subdivision with reference to the said plan.
With reference to these symbols it is important to consider the testimony of two civil engineers and surveyors who apparently expressed entirely- diametrical views on the subject. One of them, Mr. Fernando C. Gondolfo, Jr., accepted as an expert, testified that the signs and symbols clearly demonstrated that the area in question is a park; that he used the same signs and symbols to designate a park on plans that he had drawn. On cross examination however he could not recall any one plan on which he had used such symbols. He stated that he had a general knowledge of Act 134 of 1896[1] which relates to the dedication of streets and squares or plots to public use in subdivisions. It is significant to note here that under the provisions of that statute, which has since been superseded, the map of dedication must contain the name and number of each square or plat dedicated to public use. The triangular tract on the Bonnabel plan bears neither name nor number. It bears only the symbols which .the witness insisted were placed there to indicate to prospective purchasers of lots in the subdivision that they would have a respectable entrance which would be a park and nothing else. He admitted that the Bonnabel plan of June 7, 1916, the Duval plan and also the Zander plan of October 17, 1920 contained no signs or symbols indicating the dedication of the triangular portion as a park, but was positive again that the Bonnabel plan of May 18, 1922 on which the same signs and symbols as the original appeared indicated the property as a park.
To countervail the testimony of this witness, the plaintiff offered, on rebuttal, the testimony of Mr. Guy J. Seghers, who was also accepted as an expert in civil engineering and surveying and who testified that the signs and symbols used on the two plans made by Bonnabel merely indicated trees and bushes, and that they were put there to decorate or elaborate the map; to “doll it up”. He stated that he and other engineers did the same thing in preparing maps. Whenever he designates a park or playground he always writes the designation just as the maps in this case have the word “school” written on them. He testified that he knows of no signs or symbols to designate a park on a map and knows of no text book in which the subject is dealt with; that the only way he knows to designate it would be to write out the words themselves.
We are referred by the defendant to numerous decisions of this Court to the *808 effect that the owner who makes a plat on which spaces are left indicating the dedication of roads and streets and sells lots with reference to the plat does by that fact dedicate these spaces to the' public as roads or streets. Relying on this, it is defendant’s contention that sales of lands made in the Bonnabel subdivision with reference to the Bonnabel map of May 1915, constituted such a dedication in this case. That, of course, may be true with regard to the streets and boulevards which are specifically named in the dedication made by Mr. Bonnabel by notarial act on June 9, 1916 but we do not think that the rule can be extended to include the plot of ground which bears no more semblance of dedication than the mere symbols which have been referred to. It would seem to us that if that had been his intention, it should have been more clearly expressed, for under the jurisprudence of this Court such an intention is essential and it must be clearly established. See City of Shreveport v. Drouin, 41 La.Ann. 867, 6 So. 656; Town of Kenner v. Zito, 141 La. 76, 74 So. 636. Also David’s Heirs v. City of New Orleans, 16 La.Ann. 404, in which it is stated:
“The doctrine of the case quoted (Livaudais v. Municipality No. 2, 16 La. 509-513) evidently is, that the intention to dedicate to public use must be signified in a manner not liable to doubt or misconstruction, by something more than symbols of uncertain import, or fanciful adornments with which it has pleased a draughtsman to decorate a plan of property. Nemo presumitur donare.”
On the other hand, it strikes us that the attitude of the Police Jury of the Parish with regard to this triangular portion of ground has been more or less one of indifference. As far as the record shows it never took any steps to really make a public park out of it and whatever action was taken by it was merely by the adoption of certain resolutions or ordinances which never seem to have been given any great effect. Even with respect to the last ordinance adopted in 1952 by which the District Attorney was instructed to take steps to protect the interests of the public in the property, nothing ever was done.
Saulet v. City of New Orleans, 10 La. Ann. 81, holds that:
“To support a dedication of property to the public use, it must appear that the ground has been used with the assent of the owner for public purposes in such manner as to exclude the idea of' private ownership and for such a length of time that the public accommodation and the rights of individuals would be severely affected by the interruption of that use; or else it must appear unequivocally by some plan or writing, that the owner had made a dedication, to violate which would involve a breach of faith.”
*810 In this connection it is important to observe that in its resolution of June 18, 1924, adopted on the petition of property owners in Metarie Ridge, relative to the dedication of the plot of ground referred to as a “park”, the defendant Police Jury went far in conceding that it was not then public property for in the resolution itself it stated “which park is now in private use.”
If the property had been dedicated for use as a public park as long ago 4.S in 1915 or 1916, it should have had that status in 1939, at which time the servitude which had been granted to the New Orleans Public Service, Inc., had been discontinued. The rights of the railroad company having expired, the property had to revert to the rightful owners. That being so, if the property was a public park, it would have been unnecessary for the Police Jury to have had a formal transfer of the rights of the railroad company in it as the same would have reverted to it under the law. It is significant to observe also that by the decision of this Court in the case of Bonnabel v. Police Jury, supra, the succession of Bonnabel was declared to be the owner of the thirty foot strip which immediately adjoins and was a part of the triangle. Certainly with respect to this strip the title is now a matter which has been finally, judicially determined; it is res adjudicata.
It may be well to state also that whereas the Police Jury originally contended that the dedication was as of a public park, it seems to have changed its position now to one of dedication for public purposes generally. Assuming that to be its contention now it would appear to be inconsistent with its claims of dedication by the symbols on the Bonnabel map of May, 1916 by which it maintained that the property had been designated as a park.
In defendant’s brief mention is made of the fact that this particular portion of ground does not appear on the tax rolls of the Parish and that it has not been shown that plaintiff or his ancestors in title ever paid taxes on it. We have carefully examined the record and find that it bears no reference to this matter.
Our careful consideration of the entire record has led us to the same conclusion as that reached by the trial judge, who although he handed down no written reasons evidently was of the opinion that the defendant had failed to show such dedication of the property as is contemplated under the law. We are unable to find manifest error in his ruling and for that reason the judgment appealed from will be affirmed.
The trial judge was also correct in his views regarding the alternative prayer of the defendant concerning the servitudes alleged by it with regard to various public utilities. These utilities are not parties to the suit and any issue regarding any servitudes they may enjoy is not before the Court.
Judgment affirmed.

. Now LSA-R.S. 33 :5051.