95 So.2d 627

**POLICE JURY, PARISH OF JEFFERSON,**
v.
**NOBLE DRILLING CORPORATION,**
Jack C. Lockett (Made Defendant on
Call in Warranty).
No. 41156.
May 6, 1957.

Louis H. Marrero, III, Marrero, for appellant.

Frank H. Langridge, Gretna, for plaintiff-appellee.

HAMLIN, Justice ad hoc.

By petitory action the Police Jury of the Parish of Jefferson sought to be de-

clared the owner of and have delivered the possession of a tract of land, known as "Glisson Park", located at Crown Point in the Parish of Jefferson. It based its claim on two plans of survey on file in the public records, contending that they constituted a dedication of the property to the public and that the property was used as a public park until exclusive possession was taken by the Noble Drilling Corporation.

Noble Drilling Corporation called in warranty its lessor, Jack C. Lockett, and filed an application for discharge. Articles 2703 and 2704, LSA–Civil Code; Article 43, Code of Practice.

After discharge of the Noble Drilling Company as a party-defendant, with reservation of its rights by the trial court, the defendant, Jack C. Lockett, filed an answer. He averred that he had legal title to the property through a number of mesne conveyances and a resolution of November 12, 1947, passed by the Police Jury, Parish of Jefferson, renouncing any rights which it might have to the property.

An intervention filed by Thomas V. Sharp, who joined with the plaintiff, was dismissed after hearing.

The trial court overruled various exceptions filed by the defendant, Jack C. Lockett, and after trial on the merits rendered judgment in favor of the plaintiff. The defendant, Jack C. Lockett, has appealed.

The record discloses that the property was originally a part of Ida Plantation. On June 14, 1909, Dominique Harang entered into a sale of Ida Plantation to J. E. Glisson, for a consideration of $16,100. A plan of survey, being a subdivision of Ida Plantation into plots and including a park area known as "Glisson Park", was signed by George Robert, Surveyor, on August 18, 1909. Robert certified that he surveyed the tract of land and that the accompanying plat was a correct scaled map, the lines thereon being correct. This survey was filed in the public records on December 2, 1909, with the following superscription:

"In pursuance of the power vested in me by a meeting of the Board of Directors of the Southern Garden and Townsite Company held at the office of the company, 432 Carondelet Street, New Orleans, La. on 2nd day of Dec. 1909 I hereby dedicate to public use the streets, alleys, parks and ways at Crown Point, Louisiana as per this plan of survey also a strip 34′ wide on the South Side of Plots 13 and 14 and extending from Bayou des Familles to a point 120′ west of Oak Row which said dedication makes Orleans Way from Bayou des Familles to this point 50′ wide.

"Witness my hand at New Orleans, La., on this 2nd day of Dec. 1909.

"Witness
H. C. Osborne      "J. E. Glisson, President
P. J. Pearson       Southern Garden and
                    Townsite Company."

On November 26, 1909, J. E. Glisson had transferred his interest in Ida Plantation to Southern Garden and Townsite Company for stock of the company.

A map of Ida Plantation, property of Southern Garden and Townsite Company, in the form of a survey by J. W. T. Stevens, Civil Engineer, was filed in the public records of Jefferson Parish on November 1, 1910. This survey contained an area known as "Glisson Park", identically located as in the Robert survey.

On March 4, 1911, Dominique Harang sold his interest in Ida Plantation to Southern Garden and Townsite Company.

During this period, Dominique Harang and Southern Garden and Townsite Company executed a number of deeds of sale of lots, referring therein to the survey of George Robert.

On February 19, 1912, Barataria Selling Association acquired from Southern Garden and Townsite Company, a large portion of the property formerly known as "Ida Plantation". Lomas O. Stevenson in turn acquired this portion from Barataria Selling Association, and on March 24, 1916, he sold it to Isaac B. Rennyson. "Glisson Park" was in the confines of the Rennyson purchase.

Between 1916 and 1945, there were several sales and resales and a Sheriff's Sale of the Rennyson purchase between I. B. Rennyson and the Columbia Building and Loan Association. Defendant avers that "Glisson Park" was not included in these transactions.

On June 25, 1945, I. B. Rennyson sold his interest in the property to the defendant, Jack C. Lockett. This sale contained an omnibus clause, which transferred all interest which Rennyson might have in the land formerly known as "Ida Plantation".

On November 12, 1947, the Police Jury, Parish of Jefferson, passed the following resolution:

"Resolved, That 'Glisson Park', in the Town of Crown Point, Parish of Jefferson, State of Louisiana, bounded on the south and east by Bayou Barataria, on the southwest by Plot Eleven (11) and Lots One (1) and Two (2) of the Square fronting on Oak Row, on the northwest side by Squares One (1) Four (4) and Five (5) of the Town of Crown Point, and by Oak Row, Hauser Street, and Ouida Street, which Park was dedicated for public use by the then owner. The Southern Garden and Townsite Co., by the filing of a plan of survey by J. W. T. Stephens, C. E., dated November 1, 1910, in the Office of the Clerk of Court in and for the Parish of Jefferson, State of Louisiana, which dedication has never been accepted by the Police Jury of the Parish of Jefferson, be and the same is hereby declared subject to private ownership; and this

Police Jury does hereby quit-claim, renounce and forever disclaim any right, title or interest in and to said Park, in favor of the present owner and claimant of said property, the said Jack C. Lockett.

"Resolved further, That this renunciation shall not in any manner affect the streets, boulevards, highways or lanes heretofore dedicated through said property, but that, on the contrary, this resolution is adopted with a full reservation of the rights of the public in and to said dedicated streets, avenues, boulevards or public passageways.

"Resolved further, That this Police Jury does hereby reiterate the fact that it never accepted the dedication of said Park, has never used the same for public park purposes, did not go into possession thereof, and has always treated the same as though it has never been dedicated."

On February 28, 1949, Jack C. Lockett leased the property herein involved (Glisson Park) to Noble Drilling Corporation for a term of five years. The lease was filed for public record on May 23, 1949. The record shows that Noble Drilling Corporation fenced in a part of the property and went into possession of it.

On May 11, 1949, the Police Jury, Parish of Jefferson, rescinded its resolution of November 12, 1947, stating that it was legally without right to transfer or quit-claim its right to the premises.

The present action was filed on December 21, 1951.

The defendant contends that to be the successful litigant the plaintiff must stand on the strength of its own title—not on the weakness of defendant's title—and that it has failed to bear this burden. Louisiana Code of Practice, Article 44. Defendant argues that the dedication of December 2, 1909 (survey of George Robert) did not comply with Act 134 of 1896, LSA–R.S. 33:-5051, and was not a valid statutory dedication; in the alternative, it contends that if the dedication was valid, it was a "common law dedication" and constituted a servitude only (upon the property), which was lost by the non-user of more than ten years.

Act 134 of 1896 provides:

Section 1. " * * * whenever the owner or owners of any real estate situated in this State shall desire to lay off the same into squares or lots with streets or alleys between such squares or lots and with the intention of selling or offering for sale any of said squares or lots it shall be the duty of such owner or owners of such real estate, before selling any square or lot or any portion of same, to cause to be made and filed in the office of the Keeper of Notarial Records of the parish wherein such property is situated

and copied into the Conveyance Record book of such parish, a correct map of the real estate so divided, which said map shall contain the following:

"7. A formal dedication made by the owner or owners of the property .of their duly authorized agent of all the streets, alleys and public squares or plats shown on the map to public use."

Defendant argues that the above act provides that a dedication must be made by the owner of the property dedicated, and that at the time Southern Garden & Townsite Company attempted to dedicate "Glisson Park" it was not the owner of the property—the act of sale being passed on March 4, 1911. It is true that Dominique Harang transferred his interest in Ida Plantation to Southern Garden & Townsite Company on March 4, 1911; however, in the act of sale we find the following:

"And here the said J. E. Glisson acting in his personal behalf specifies and confirms this sale to the Southern Garden & Townsite Company, transferring and relinquishing to it any and all rights, title and interest which he has or might have under and by virtue of the agreement to sell the said property to him made by Dominique Harang dated January 29th., 1909, and June 14., 1909; and confirming the sale under private signature which he made to the said Southern Garden and Townsite Company, under private signature, acknowledged before J. F. Meunier, N. P., dated November 26th., 1909; registered in C.O.B. 29, fo. 68."

We believe that the act of sale, dated March 4, 1911, was merely a formalization of prior transactions.

The act[1] entered into on June 14, 1909, between Harang and Glisson, constituted a sale. Its very terms evidenced such

1. "That, I, D. Harang, for and in consideration of the price and sum of Sixteen Thousand One Hundred ($16,100.00) Dollars, payable as follows, to-wit: One Hundred ($100.00) Dollars cash, receipt of which is acknowledged, One Thousand ($1,000.00) Dollars on or before the 15th. day of July 1909, and Two Thousand ($2,000.00) Dollars, every three months thereafter until the full sum of Sixteen Thousand ($16,000.00) Dollars, has been paid. Deferred payments to bear interest at the rate of 8 per cent per annum. Do by these presents agree to sell J. E. Glisson, his heirs or assigns my plantation situated in Jefferson Parish La. known as the "Ida Plantation"

containing 626 arpents, bounded on the East by Bayou des Famille, on the South by Bayou Barataria, on the West by "Inez Plantation and on the North by Browns Christmas Plantation. Being the same property acquired by me from Henry Veering and others * * * Together with all the improvements and appurtenances thereto belonging, including the live stock, and growing crop. And I agree that after One Thousand ($1,000.00) Dollars has been paid as above stipulated to release my vendor's lien and privilege on any portion or subdivision of said land on the said Glisson paying ($50.00) per acre for same and allow him to sell the stock and present growing

intent, and it contained no conditions except payment of the price. The contract was complete as to both the vendor and vendee, and only default of payment of the price as stipulated would have been cause for annulling the contract.

"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid." LSA–C.C. Art. 2456.

"A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing so far amounts to a sale, as to give either party the right to enforce specific performance of same." LSA–C.C. Art. 2462.

In the very early case of Stephens v. Chamberlin, 5 La.Ann. 656, this Court had under consideration a contract[2] similar to the one in the instant case, and it stated:

"The contract on which the suit is instituted is in terms a sale, and not an agreement to sell; but if considered, as in the argument, a mere agreement to sell, our Civil Code declares that the 'sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and the price thereof.' Art. 2431. And that even 'a promise to sell amounts to a sale when there exists a reciprocal consent of both parties as to the thing and the price thereof.' Art. 2437. In this case, the agreement was clothed with the formality required by article 2415 [LSA–C.C. art. 2440], for the sale of real property. The Su-

---

crop. The amount thus received to be retained by me, D. Harang, and after I have deducted the actual expense of cultivation and works of Improvement since March 9th, 1908. I will apply the remaining proceeds of said sales to the payment on the land and to the installments as they fall due as stipulated above. Said land to remain in possession of D. Harang until Six Thousand ($6,000.00) has been paid.

"I reserve the right to annul this contract on failure of said Glisson to make the payments as above stipulated and the said Glisson agrees that such failure will render this contract null and of no effect."

2. "It is understood and agreed between James H. Stephens and Harvey Chamberlin, as follows: J. H. Stephens sells to said Chamberlin certain lands, (describing them) containing in all 706–83–100 acres more or less, and to make title to him, or in the name of such person as he may designate; for which said Chamberlin is to pay him two thousand and seven hundred dollars. Nine hundred dollars of which is to be paid by an accepted draft, on or before the 15th of February next; nine hundred dollars by note payable the 15th of February, 1850; and like sum on the 15th February, 1851, with eight per cent interest from date until paid. For said notes, the land is to remain mortgaged. * * *"

preme Court has often held that such an agreement as was reduced to writing and signed in the present case, is a sale, and constitutes a complete title to the vendee. Joseph v. Moreno, 2 La. 460. Barrett v. His Creditors, 12 Rob. 478. Crocker v. Neely [Nuley], 3 Mart.,N.S., 583. Pignati[e]l v. Drouet, 6 Mart.,N.S., 432." See also, Teal v. McKnight, 110 La. 256, 34 So. 434.

Having found that the act of June 14, 1909, between Dominique Harang and J. E. Glisson, constituted a sale, it follows that the transfer of November 26, 1909, by J. E. Glisson of his interest in "Ida Plantation" to Southern Garden and Townsite Company for ·stock of the company, was, likewise, a valid sale.

■ In the act of November 26, 1909, Southern Garden and Townsite Company assumed the unpaid installments, and the act also referred to the survey by George Robert. Therefore, the dedication of Glisson Park provided for in the survey by George Robert in 1909 and the dedication of Glisson Park provided for in the survey by J. W. T. Stevens on November 1, 1910, were valid statutory dedications made by the then owner of the property. In any case, there was a substantial compliance with Act 134 of 1896. Metairie Park, Inc., v. Currie, 168 La. 588, 122 So. 859. Therefore, there was no necessity for a formal

acceptance by the then public authorities of Jefferson Parish.

"While in a common-law dedication there must be an acceptance by use or otherwise on the part of the public, this is not necessarily so in the case of a statutory dedication. 18 C.J. sec. 68, p. 73. The effect of a statutory dedication is generally indicated by the statute itself.

"We are of the opinion in view of the language contained in Act 134 of 1896, the dedication under review was complete without a formal acceptance by the public authorities. We are also of the opinion that the irrevocable character of the dedication was not affected by the fact that the property dedicated was not at once subjected to the uses designed. This view is sustained by the case of Sowadzki v. Salt Lake County, 36 Utah 127, 104 P. 111, and the authorities therein cited." Arkansas-Louisiana Gas Co. v. Parker Oil Co., Inc., 190 La. 957, 183 So. 229, 240. See, also, Richardson & Bass v. Board of Levee Commissioners, 231 La. 299, 91 So.2d 353, 372, 373.

The testimony of record discloses that the property was subjected to the uses designed by the Southern Garden & Townsite Company—namely, a park. There was also a manifest intention on the part of Southern Garden & Townsite Company to dedicate the area herein involved as a park,

since the original survey named the area "Glisson Park". Mecobon, Inc., v. Police Jury of Jefferson Parish, 224 La. 793, 70 So.2d 687. In fact, the transfers to defendant's ancestors in title mentioned the park as a boundary.

■ Under Act 134 of 1896, Glisson Park was properly dedicated to the Parish of Jefferson as a public park. The Police Jury was, therefore, devoid of any legal right to renounce and disclaim its title to the park. Article IV, sec. 12, Louisiana Constitution of 1921, LSA. Its action in 1949, rescinding the resolution of 1947, did not constitute an impairment of the obligation of contracts.

For the reasons assigned, the judgment of the trial court is affirmed, and it is ordered, adjudged and decreed that the Police Jury, Parish of Jefferson, be, and it is hereby recognized as the sole owner of the following described property, to-wit:

"A certain piece or portion of ground, situated, lying and being in the Parish of Jefferson, State of Louisiana, in the District of Barataria, Town of Crown Point, designated as 'Glisson Park' on plan of Ida Plantation made by J. W. T. Stevens, C. E., dated November 1, 1910, a copy of which plan is attached to an act of sale before C. C. Friedrichs, Notary Public of Orleans Parish, dated April 27, 1920; and according to said plan

said piece or portion of ground is bounded on the South and East by Bayou Barataria, on the Southwest by Plot 11 and Lots 1 and 2 of Square fronting on Oak Row, on the Northwest side by Square 1, 4 and 5 of the Town of Crown Point, and by Oak Row, Hauser and Ouida Streets."

All costs to be paid by the appellant, Jack C. Lockett.

FOURNET, C. J., absent.

McCALEB, J., concurs in the decree.