GEORGE E. McKERNON AND JOSEPH CASAZZA, APPELLANTS, *v.* CITY OF RENO; JOHN MARSHALL, DICK DIMOND, JOE MASTROIANNI, CHARLES COWAN AND GEORGE CARR AS CITY COUNCIL OF THE CITY OF RENO; RENO CHAMBER OF COMMERCE, INC., AND HARDESTY & SON, INC., RESPONDENTS.

No. 4299

December 9, 1960                    357 P.2d 597

(Petition for rehearing denied January 11, 1961.)

*Ernest S. Brown, Jack I. McAuliffe* and *George E. McKernon,* all of Reno, for Appellants.

*Roy Lee Torvinen* and *Richard Breitwieser,* of Reno, for Respondent City of Reno.

*Springer, McKissisk & Hug,* of Reno, for Respondent Reno Chamber of Commerce, Inc.

*Vargas, Dillon & Bartlett,* of Reno, for Respondent Hardesty & Son, Inc.

## OPINION

By the Court, BADT, J. :

This appeal requires the determination of the proper use that may be made of land dedicated as a "plaza"; and the disposition of question prior to such determination with reference to the precise nature of the dedication, the necessity for its acceptance, and the effectiveness of the covenants of certain deeds (of lots in the same subdivision as the dedicated plaza, and owned by the dedicator) executed, respectively, four and six years after the dedication. Appellants, as the successors in interest of the grantee in such later deeds, sued for an injunction against the construction of a certain "Hospitality Center" on the dedicated plaza, and have appealed from a judgment denying such relief.

We start with appellants' assertion: "The area in issue was given to the City of Reno by Myron C. Lake in the year 1870 by a dedication which appears on appellants' Exhibit A." Such exhibit consisted of a plat filed by Lake in which he had laid out sundry streets and also an area entitled "Plaza." No question is raised as to the proper filing or recordation of this plat. Indeed, it was stipulated in open court by counsel (counsel for appellants dictating the stipulation into the record and counsel for the respondents concurring) : "The stipulation is that the plaza set forth on plaintiffs' Exhibit A and the whole thereof and the blocks as indicated on the [plat] and lots constitute the dedication of Myron C. Lake initially concerning the matter which is before your Honor." Counsel for respondents clinch the matter further: "Mr. McKissick: As I understand the stipulation, that map represents the dedication of the plaza and the whole thereof as shown thereon. Mr. Brown:

That is correct, your Honor. The court: Very well, the record will so show."

The record then becomes silent as to what occurred between such dedication in 1870 up to the year 1874. However, both parties have relied upon and have quoted in considerable length in their briefs the language used by NORCROSS, J., in the District Court of the United States for the District of Nevada in Myron C. Lake v. Washoe County, The City of Reno, et al. (decision unreported, filed in said court November 1, 1944). The Myron C. Lake, plaintiff in that case, was the son of the Myron C. Lake who made the 1870 dedication. The former sought a decree revesting in him the title to a piece of land that had been included in the dedication by his father of a certain square or plaza, by reason of its abandonment by the city. The federal district court granted a motion to dismiss. In its opinion the court said: "It is a part of the history of the state that the Central Pacific Railroad was completed to a point within what is now the City of Reno in May, 1868, at which time the town of Reno was established as the station most convenient for handling freight and passengers to and from Virginia City; that the transcontinental railroad system, of which the Central Pacific was a part, was completed a year later, May 10, 1869; that the State Legislature of 1871 passed an act changing the county seat of Washoe County from Washoe City to the town of Reno. (Stats. Nev. 1871, p. 59) Hess v. Pegg, 7 Nev. 23. In order to induce the county commissioners to locate the courthouse at the new county seat of Reno, where it is now and has been located since about the year 1871, the said Myron C. Lake granted to the County of Washoe the site for the new county building and courthouse and across Virginia street and immediately in front thereof, set apart an open square, and to the north and south thereof two other tracts of land separated therefrom by streets connecting with said Virginia street. It is also a matter of common knowledge that the said Myron C. Lake as owner of the land adjoining these several tracts so set apart for public use as open squares

or plazas, sold all of the remaining portion of his land holdings to purchasers who purchased the same in respect to such open squares or plazas." (The federal court then referred to legislative proceedings whereunder part of the "public plaza" dedicated by Lake was used as a site for a Carnegie library and to the subsequent construction of a federal building "upon a portion of said plaza.") The references to the fact that Lake, after his dedication, "sold all of the remaining portion of his land holdings to purchasers who purchased the same in respect to such open squares or plazas" did not place the dates of such private sales. The court below stated in its written opinion: "With reference to the position that Myron C. Lake dedicated the plaza to enhance the value of said lots 1, 2, and 3. Such acts are activities in the growth of history, is a part of the history of Nevada of which the court takes judicial notice." The court did not, possibly could not, take judicial notice of the feverish activity and growth of and within the City of Reno in the period following the establishment of the county seat of Washoe County at Reno in 1871, including the building of many residences in "Lake's south addition" as reported in the current press of that year. We make no point of this. It was apparently beyond the ingenuity of counsel to present competent proofs of these matters. Appellants say that the burden was on respondents to prove sales of lots by Lake between 1870 and 1874 as proof of acceptance of Lake's dedication of the plaza or as proof of an estoppel against an attempt by Lake to recall his dedication. Respondents insist that the burden was on appellants to show that there were no sales during this period as part of their proof that they were entitled to the injunctive relief sought. Again we make no point of this, and mention it only to complete the historical picture. The conclusions we have reached are based on principles of law independent of those arising from the sale of lots by the dedicator of streets or public places.

On March 19, 1874 Myron C. Lake sold to the predecessor in interest of appellants lots 1 and 2, and on June 1, 1876 sold to such predecessor lot 3 in block 2 which

fronted on the dedicated plaza. Each of these conveyances contains the following covenant: "And the said party of the first part hereby agrees that he will not sell or lease or otherwise dispose of the land in front of said lot[s] above described, nor build on same or allow any other person or persons to do so, but keep the same open and public as a 'public plaza.'"

(1) Appellants contend that under the holding of this court in Shearer v. City of Reno, 36 Nev. 443, 136 P. 705, 707, there being no evidence in the record to show that the city accepted the dedication, or that Lake had sold lots with reference thereto, before he sold to Jones, the predecessor of the appellants, Lake had the full power, right, and authority to recall at his pleasure the dedication to the city, including his right to put further restrictions on such dedication, such as the condition that he would not "build on [the land dedicated as a plaza] or allow any other person or persons to do so, but keep the same open and public as a 'public plaza.'" The language used in the Shearer case does indeed set forth such proposition of law in the following language: "A dedication of land for public purposes is simply a devotion of it, or of an easement in it, to such purposes by the owner, manifested by some clear declaration of the fact. If nothing beyond the declaration be done—if there be no acceptance by the public of the dedication, and no interest in the property be acquired by third parties— the dedication may be recalled at the pleasure of the owner." The learned trial judge rejected this authority as being not in point. In this he was correct, because that case dealt entirely with the question of dedication of a street, namely, Riverside Avenue, whereas the present case deals with the dedication of a plaza. The application of the law to these two differing situations is in turn entirely different.

In the dedication of a street a burden is placed upon the city. The improvements upon a dedicated park are left to be made by those who are interested. The city may take it up, or it may be left to individuals. The resulting public benefit may result simply from leaving a space for air or unobstructed view. Attorney General

v. Abbott, 154 Mass. 323, 28 N.E. 346, 13 L.R.A. 251. It is such theory that developed into the rule enunciated in Smith v. State, 217 Ind. 643, 29 N.E.2d 786, 791, where the court said: "The authorities are abundant which hold that where the dedication is beneficial to the donee without imposing any burdens, acceptance will be presumed as of the date of the dedication. McQuillin Municipal Corporations, 2d Ed., Vol. 4, p. [771] 554, sec. 1703; Ramstad v. Carr [1915, 31 N.D. 504, 154 N.W. 195, L.R.A. 1916B 1160]."

In the last-named case the court, after noting the general propositions that a dedication is in the nature of a grant, that a grant does not become effective until accepted by the grantee, that such acceptance need not be by formal or express words but may be by acts or conduct, says: "It is also true, as a general rule, that delivery of a grant implies its acceptance by the grantee, * * * and acceptance of a grant beneficial to the grantee may be presumed. This is especially true where it conveys valuable property and creates no obligation or burden to be assumed by the grantee." [31 N.D. 504, 154 N.W. 202] The court then notes the great conflict in the authorities upon the question of whether an acceptance is necessary in the case of a statutory dedication, and concludes that the more prevalent rule is that an acceptance is necessary, quoting McQuillin Municipal Corporations, secs. 1576–1578. The discussion, however, centers about the iniquities that would follow if an owner of property could thrust upon a city, without its consent or acceptance, the dedication of many streets and alleys with the consequent burden of their improvement and maintenance. It would seem, however, that the reason for such prevalent view fails where the dedication confers a benefit on the public without imposing any burden. In this respect the opinion further quotes McQuillin, sec. 1578, as follows: "A further exception is apparently declared by some authorities by holding that where the dedication confers a benefit on the public without imposing any burden, as when land is donated for a public park or square or

school site, an acceptance will be presumed, and the dedication becomes complete as soon as the owner has manifested his intent by appropriate acts or declarations." It was further noted in the opinion that it was a number of years before improvements were made, that such situation is usually the case, and that the donor will be presumed by law to have contemplated such state of things and to have imposed no condition upon the public to use the property dedicated until the public wants required its improvement and use for the purpose indicated. Nor is there anything in the record of this case to show that Lake, when making the dedication, contemplated a public use of the dedicated plaza till such time as the growth and expansion of the municipality made it desirable for public convenience that it be so used.

So we may accept the assertion of appellants that the general rule is well settled that for a valid and complete dedication an acceptance in some form is essential. City of Santa Clara v. Ivancovich, 47 Cal.App.2d 502, 118 P.2d 303; Union Transportation Company v. Sacramento County, 42 Cal.2d 235, 267 P.2d 10; 26 C.J.S. Dedication, sec. 34, pp. 459 to 463; that in the absence of an acceptance, a "dedication" is in law merely an offer to dedicate, Union Transportation Company v. Sacramento County, supra, and that a mere offer to dedicate does not become binding until such offer is accepted, Sacramento County v. Lauszus, 70 Cal.App.2d 639, 161 P.2d 460.

There are, however, several exceptions to this rule, as (1) where a formal dedication is made by a state or municipality, State of California v. United States, 9 Cir., 169 F.2d 914; (2) where a dedication is made in compliance with statutes relating thereto, Police Jury, Jefferson Parish v. Noble Drilling Corporation, 232 La. 981, 95 So.2d 627 (though there are decisions contra which hold that an acceptance is required both in statutory and common-law dedications, City of Carlsbad v. Neal,

56 N.M. 465, 245 P.2d 384) ; and (3) where a dedication is by sale of lots with reference to a plat showing dedications, in which case the weight of authority holds that no acceptance is necessary, The City of Santa Clara v. Ivancovich, 47 Cal.App.2d 502, 118 P.2d 303. But see Walton v. City of Clermont, Fla.App., 109 So.2d 403.

The fourth exception is the one we have first noted, that where a dedication is beneficial to a donee without imposing any burden, acceptance will be presumed as of the date of the dedication. Smith v. State, supra; Attorney General v. Abbott, supra; Ramstad v. Carr, supra. See also City of Russell v. Russell County Building and Loan Association, 154 Kan. 154, 118 P.2d 121, and Rice v. Clare County Road Commission, 346 Mich. 658, 78 N.W.2d 651.

The dedication having become complete in 1870, Lake was without authority to resume control or to limit or curtail the rights of the public to any greater extent than provided in the terms of the original dedication. Accordingly, the attempted limitation contained in the covenant in Lake's deeds of 1874 and 1876 were without avail. Attorney General v. Abbott, supra; Archer v. Salinas City, 93 Cal. 43, 28 P. 839, 16 L.R.A. 145; Shearer v. City of Reno, 36 Nev. 443, 136 P. 705.

Appellants contend that the 1870 dedication was ineffective because the City of Reno was not incorporated till 1903. This contention overlooks the essential fact that the dedication is to the public and that the public is an ever-existing grantee, capable of taking a dedication for public use. Trustees of M. E. Church, Hoboken v. Council of Hoboken, 33 N.J.L. 13. Hence the existence of a corporation in which to vest the title is not essential. Rutherford v. Taylor, 38 Mo. 315; Cincinnati v. White, 6 Pet. 431, 31 U.S. 431, 8 L.Ed. 452.

(2) Appellants next contend that even if they are bound by the terms of the original dedication, unaltered

by Lake's subsequent deeds, such original dedication as a plaza was violated by the construction upon the dedicated property of the "Hospitality Center."

It may first be noted that the city council has the power to determine and declare what are public uses for the purposes of the city and to provide for the construction, improvement, and maintenance of city parks and all public places and to make any other public improvements of any nature. Stats. Nev. 1905, 100; Stats. Nev. 1945, 408, 428; Reno Charter, Art. I, sec. 3, Art. XII, secs. 10.15, 10.480. The cases are legion in which the courts have been called upon to determine whether certain structures and improvements have been inconsistent with the dedication of lands within a city as public squares, parks, and plazas. To discuss them all and to reconcile with each other many that appear conflicting would not be helpful. Each case must turn upon its own particular facts. The parcel here dedicated as a plaza comprises some 15,000 square feet in the heart of the City of Reno. The "Hospitality Center" constructed thereon occupied approximately 1,500 square feet—some one-tenth of the area—in one corner of the property. It was constructed at the time of the Winter Olympics at Squaw Valley, to which Reno was the gateway, and its architectural form corresponded to that of the Nevada Building at Squaw Valley. Its architectural beauty may well have been a matter of contention. The architect's plans and his sketch of the completed structure were in evidence. The trial court found "that the construction of the building will not interfere with the plaintiffs' easement of light, air, and view, if they have such * * * that the construction and use of such building is a proper and legal use of said public plaza * * * that there is a need for an Information Center in the City of Reno * * * that said building will be ornamental and will add to the public use and enjoyment of said plaza. It does not appear from the evidence that the construction of said Hospitality Center will impair the value of plaintiffs' property. In fact, it appears quite

probable that the value of all property in question will be enhanced." These, for the most part, are factual determinations for which there is substantial support in the record, and with which we shall not interfere.

As examples of the many cases which have approved the building of various structures upon lands dedicated to the use of the public for parks, squares, and plazas, see Spires v. City of Los Angeles, 150 Cal. 64, 87 P. 1026; Mahon v. Luzerne County, 197 Pa. 1, 46 A. 894; Williams v. Gallatin, 229 N.Y. 248, 128 N.E. 121, 18 A.L.R. 1238; City of Wichita v. Clapp, 125 Kan. 100, 263 P. 12, 63 A.L.R. 478; Dodge v. North End Improvement Ass'n., 189 Mich. 16, 155 N.W. 438; McLauthlin v. The City and County of Denver, 131 Colo. 222, 280 P.2d 1103. We are compelled to reject the appellants' contention that the "Hospitality Center" was a structure that violated the dedication to public use as a plaza.

It is next contended that as the "Hospitality Center" was built by the Reno Chamber of Commerce as lessee of the City of Reno and as its main purpose was to attract tourists to the city as an economic benefit to the city and to sundry businesses and occupations maintained in the city, its purpose was not the enhancement of the enjoyment of the inhabitants of the city as a whole and was, therefore, not a public benefit. We gather that appellants feel that while accumulations of tourists may benefit sundry hotels, motels, restaurants, bars, gambling casinos, and commercial businesses of various kinds, they add nothing to the public enjoyment. The argument is without conviction. Encouragement of and offers of hospitality to tourists are now promoted, as public benefits, in all countries of the world—at least in those countries where visitors are welcome; and such hospitality may be extended, as here, through the chamber of commerce. Appellants then rely upon Teacher Building Co. v. City of Las Vegas, 68 Nev. 307, 232 P.2d 119, as authority for the contention that such attempted devotion of public property for private use may be enjoined. We have seen that in the instant case the

"Hospitality Center" served a public benefit. In Teacher Building Co. the city had attempted to vacate 30 feet of an 80-foot street to permit the vacated portion to vest in the abutting owners and restricting the plaintiff's 80-foot street approach on which they in turn abutted to a 50-foot street approach. We think the case is clearly distinguishable.

Appellants further contend that because the terms of the public dedication were violated, there was a reverter to the abutting owners and their successors. We do not reach this point in view of our holding that the use of the dedicated ground was not a violation of the terms of the dedication.

We find no error in the court's denial of plaintiffs' complaint for an injunction restraining the building of what was then the proposed structure.

Affirmed.

McNAMEE, C. J., and PIKE, J., concur.