SMITH ET AL. *v.* STATE OF INDIANA ET AL.

[No. 27,427. Filed November 8, 1940. Rehearing denied December 2, 1940.]

*James W. Noel* and *Robert D. Armstrong,* both of Indianapolis; for appellants.

*Samuel D. Jackson,* Attorney General, *Caleb J. Lindsey,* Deputy Attorney General, and *Thomas Longfellow,* Deputy Attorney General, for appellees.

TREMAIN, J.—The appellants were plaintiffs below and filed this action for a writ of assessment of damages and the appointment of appraisers pursuant to the provisions of the eminent domain statutes. Sections 3-1701, et seq., Burns' 1933, §§ 14061, et seq., Baldwin's 1934. Appellees filed objections to the issuance of the writ, to which appellants replied. The cause was submitted to the court for trial upon a stipulation of the facts. Judgment was rendered against appellants that they take nothing by their complaint, and that the issuance of a writ of assessment be denied. Motion for a new trial was filed, based upon the ground that the judgment was not sustained by sufficient evidence and was contrary to law. On appeal the appellants rely upon the alleged error of the court in denying the motion for a new trial and in sustaining the objections filed by the appellees.

The facts stipulated disclose that on October 8, 1912, the appellant David F. Smith, then unmarried, and 20 other landowners executed a written instrument whereby they dedicated to the public for highway purposes a strip of land 100 feet in width, described by metes and bounds, extending across and over the land of the grantors named in said instrument of conveyance; that all of the land lay outside of the corporate limits of the City of Indianapolis, but adjoined its north corporate line at the termination of North Meridian Street in said city; that the 100-foot strip extended directly north from the north end of Meridian Street, with the exception that beginning on the land of the appellant Smith the 100-foot strip bore to the

west around a hill or high land; that said bend to the west extended over the land of the landowner adjoining Smith on the north and then returned to the east and extended north on a direct line.

The instrument whereby the appellants and others dedicated the land to the State of Indiana in part is as follows:

### "DEDICATION OF NORTH MERIDIAN STREET TO THE STATE OF INDIANA AND AGREEMENT.

"We the undersigned owners of real estate (describing it) hereby dedicate to the public, to be known as North Meridian Street, so much of the following described strip of land that lies within the boundaries of the land owned by us in the above one-quarter ($\frac{1}{4}$) sections, subject to the following restrictions:

"Said strip of land being 100 feet in width, lying 50 feet on either side of the following described center line to-wit: . . .

"All in accordance with the attached plat and the following restrictions . . ."

The restrictions enumerated pertain to buildings and structures, and provide that none shall be built within 100 feet of the property lines of Meridian Street; that all buildings shall be used for dwelling purposes, except necessary out-buildings; that no building within 350 feet shall be of less cost than $5,000; that no malt, vinous, or spirituous liquors shall be made or sold on any part of said real estate; that the roadway described shall be limited to pleasure vehicles; that the several owners may enforce these restrictions by injunction; that the restrictions enumerated shall be imposed on each part and parcel of the real estate and run with the land for 20 years from the 1st day of October, 1912.

The instrument was executed by the landowners, joined by their husbands or wives, duly acknowledged

by a notary public, and recorded in the recorder's office of Marion County, which recordation included a plat showing the lands owned by the grantors, and the 100-foot strip extending north to be known as Meridian Street. Before the instrument was recorded, as shown on the back thereof, it was "duly entered for taxation October 9, 1912, W. T. Patten, Auditor, Marion County."

The first question presented for consideration by the appellants is based upon the proposition that the highway described in said written instrument was not opened and used within 6 years thereafter, and, therefore, ceased to be a highway for any purpose whatsoever. To sustain their position they cite and rely upon § 36-1808, Burns' 1933, § 8771, Baldwin's 1934. This section is section 16 of chapter 167, Acts of the General Assembly of 1905, page 521. It provides that every public highway already laid out or which may be hereafter laid out, and which is not opened and used within 6 years from the time of its being so laid out, shall cease to be a highway for any purpose. Appellants contend that this section is applicable and controlling where a highway has been dedicated by the landowners by the instrument of dedication referred to.

In considering the extent and effect of this section, it will be noted that it is a part and parcel of a statute authorizing the condemnation of real estate by proceedings had on petition filed with the board of commissioners of the county by 12 freeholders. After such petition is filed, viewers shall be appointed to locate the highway. If their report is favorable to the highway and no objections are filed, it shall be recorded as a highway. It is provided that remonstrances may be filed by landowners, and reviewers shall be appointed who shall qualify as provided by section 6 to assess

and report damages in favor of the remonstrators. If it shall be made to appear to the board of commissioners that the damages assessed are unreasonable, it may set the assessment aside and order another review. Section 9 provides that if any freeholder residing in the county shall remonstrate against the proposed highway upon the ground that it is not of public utility, reviewers shall be appointed and qualified to pass upon that question. From the final action of the board of commissioners in reference to the highway, the statute provides for an appeal to the circuit court. Section 10 provides that no highway shall be opened until the damages assessed shall be paid. The following sections contain provisions as to qualifications of viewers and reviewers, for removal of fences, and other provisions. Following these sections is section 16, *supra,* upon which appellants contend that, because the State of Indiana did not take possession of the 100-foot strip of land and open it for public travel within the 6-year period, it is forever barred.

To uphold their contention and construction of the statute, the appellants cite *Decker* v. *Washburn* (1894), 8 Ind. App. 673, 35 N. E. 1111. This was a proceeding before the Board of County Commissioners based upon a statute similar and in almost exactly the same language as the 1905 Act, *supra.* In that case the board ordered the highway opened, which judgment was confirmed by the court upon appeal, together with $500 to the appellee as damages. The damages assessed were not paid within the 6-year statute, and the highway was not laid out and established pursuant to the judgment. The court held that the statute was applicable to that proceeding, and that because of the failure to pay the damages and open the road within the 6-year period specified, the right to open was forever lost.

They rely upon *Lake Shore, etc.* v. *Town of Whiting* (1903), 161 Ind. 76, 67 N. E. 933. A highway was laid out by order of the board of commissioners, but was not opened within the 6-year period. However, within 3 years after the road was ordered established, the territory which embraced the road was annexed to and became a part of the town of Whiting, and the town proceeded to open and use the streets long after expiration of the 6-year period. The court held that when the town assumed jurisdiction over the highway or right to a highway, such right continued in the public until extinguished in some manner provided by law; that when the highway became a part of the city by annexation, it thereby became controlled by the jurisdiction of the town and lost its character as a country road, and was no longer controlled by the act under which it was opened.

The other case relied upon is *Baltimore, etc., R. Co.* v. *Town of Whiting* (1902), 30 Ind. App. 182, 65 N. E. 759. This is a proceeding similar to that described in the Lake Shore and Decker cases. The highway was established by a judgment of the board of commissioners but was unopened when the land was included within the limits of the town of Whiting. The conclusion was the same as in the Lake Shore case.

It is clear that the 6-year statute relied upon by appellants, together with the decisions cited, would be controlling if this were a proceeding before the Board of County Commissioners to condemn land for use as a public highway, and, after such condemnation and assessment of damages, the petitioners had failed for a period of 6 years to pay the damages and open the road. It is not clear, however, that the statute is applicable to the case at bar. Here is a voluntary dedication of land, by a written instrument,

to the State of Indiana for public use by 21 landowners, and by the terms of the written instrument these owners parted from all right, title, or interest in the 100-foot strip. The small triangular tract, upon which appellants ask a writ of assessment, is wholly within the 100-foot strip. To emphasize their intention of conveying this land to the state for public use they caused the instrument to be recorded in the recorder's office, and the 100-foot strip to be taken from their land and placed on the tax duplicate in the name of the grantee, whereby the grantors were relieved from further payment of taxes levied thereon by the county and state.

Statutes in this state authorize the state, counties, townships, towns, and cities to receive donations and dedications of lands for public use. Sections 36-118 and 48-801, Burns' 1933, §§ 8657 and 12473, Baldwin's 1934. No distinction has been discovered in reference to the law of dedication to one or other of these divisions. Acts which would constitute a dedication to the State of Indiana would also amount to a dedication to a city, if it had been made to the city or county instead of the state.

In *Rhodes* v. *Town of Brightwood* (1896), 145 Ind. 21, 43 N. E. 942, a situation is presented whereby it became necessary for the court to consider a dedication similar in principle to the one here involved. Many years prior to the action filed in that case, the owners of 50 acres of real estate adjoining the City of Indianapolis platted what was known as Oak Hill addition to the City of Indianapolis, and divided it into blocks and lots, streets, alleys, and a tract known as Morris Park. It appears that the addition was not made a part of Indianapolis, but 8 years after it was platted it was annexed to and became a part of the town of Brightwood. The appellant claimed to be the owner of

Morris Park by *mesne* conveyances from the former owner who platted the land, and asked to have his title quieted. The appellant contended on appeal that these facts did not show a dedication of Morris Park to the public; that it was never accepted by the public until after the donors had revoked the dedication and assumed dominion over the property. The appellee contended that the filing of the Oak Hill plat in the recorder's office was an express dedication to the public of the streets, alleys, and public grounds therein designated, including Morris Park; that while a person might call his property a park and such naming of it would not constitute a dedication, yet when he subdivided the property and placed his plat on record, marking part of it as streets and alleys, and one part of it as a park, and then sold part of it as lots with reference to this plat, the rights of both the public and the purchasers of lands intervened, and thereafter the dedication was irrevocable. On page 23, the court said:

> "We are of opinion that the contention of the appellee is the law, and must prevail.
> "In Dillon Munic. Corp. (4th ed.), section 644, it is said that, 'The doctrine of dedication to public uses has also been extended and applied to *public squares* in cities and villages . . .; and the fact of dedication may be established in the same manner as in the case of highways and streets.'"

The court further said that where dedications by maps and plats are so made as to render it difficult to determine their nature and extent, it is a safe general rule to resolve doubts against the donor, and within reasonable limits to construe the dedication so as to benefit the public rather than the donor. The court held that the intention of the grantor to donate Morris Park to the public was manifested by his acts; that the

dedication was complete and binding upon the donor and his grantees.

*Walmer* v. *Town of Bremen* (1934), 99 Ind. App. 186, 191 N. E. 175, involves a question of the dedication of land to public use. A certain tract was platted and recorded as provided by statute as an addition to the town of Bremen. The question arose concerning the use of a street contained in the plat. The plat was laid out and recorded in 1875, but was not annexed to the town until 1931. The intention of the owner to dedicate his land to public use is held to be inferred from the fact that he proceeded as provided by statute in laying out, platting, and recording the plats. Appellant also contended that there must be an unmistakable acceptance by the donee or grantee to constitute a dedication. However, the Appellate Court held that the annexation of the addition to the town was a sufficient acceptance, and as authority for this holding cited *Murray* v. *City of Huntingburg* (1918), 187 Ind. 504, 119 N. E. 209, and *Interstate Iron, etc., Co.* v. *City of East Chicago* (1918), 187 Ind. 506, 118 N. E. 958. It was held that the dedication was complete.

The question of the dedication of land for public use is discussed in *Haynes* v. *Thomas* (1855), 7 Ind. 38. There the owner of land, by a plat of the town, dedicated to the public all the ground between certain lots and the Wabash River as a public street. Later the question arose as to the effect of the dedication. It is pointed out that the plat was recorded pursuant to the law, and in discussing the facts there presented, the court held that the recording of the plat operated as a warranty deed to the public of the streets and alleys described. "The right to use a street in a town adjoining a lot abutting upon it, is as much property as the lot itself, and the legislature has as little power to take

away one as the other. Whether the act of dedication transfers the fee from the donor to the public, is not a material inquiry. . . . it is said, that after the dedication and the acquisition of private rights with reference to it, the law considers it in the nature of an estoppel *in pais,* which precludes the original owner from revoking the dedication." (p. 43.)

The question of dedication is discussed in *Hall* v. *Breyfogle* (1904), 162 Ind. 494, 70 N. E. 883. It is there said (p. 500):

> "Acceptance by the public of a dedication may be manifested by some formal act of the public authorities, or implied from the latter's improving or repairing the same, or from any other act with respect to the subject-matter that clearly indicates an assumption of jurisdiction and dominion over the same."

So in the case at bar, the intention of the appellant and his 20 associates is clear and distinct. The instrument conveying the 100-foot strip to the state for public use contained no reservations in favor of appellants. That instrument, together with a plat exhibiting clearly and distinctly the land conveyed to the public, was never revoked by the grantors. The State Highway Commission in 1931 formally accepted the dedication and immediately proceeded to and did construct thereon a 4-lane concrete highway in the year of 1932, and at all times since the same has been used as a principal thoroughfare for travel to and from the City of Indianapolis; and the same is now a continuation of Meridian Street due north from the city.

It is stated in *The Town of Marion* v. *Skillman* (1890), 127 Ind. 130, 26 N. E. 676, that, where a dedication has been made and is complete, it cannot be revoked by the mere act of the owner; that, where the dedication is complete in itself, it ceases to be a

question of fact, but is purely one of law; that if the dedication were implied only by operation of law from the acts of the owner, when accepted it would be considered as in the nature of an estoppel *in pais* and would become irrevocable. The instrument of conveyance is sufficient to pass complete title from the grantors to the grantees, and cannot be revoked by the mere act of the owner. See annotation in 123 A. L. R. 542 and *Hooper* v. *Haas* (1928), 332 Ill. 561, 164 N. E. 23, 63 A. L. R. 658.

Appellants, however, say that the instrument does not amount to more than an offer to dedicate. It appears from the authorities that an offer to dedicate may be classified as either a common-law or a statutory dedication. The facts here presented fall within the class designated as a common-law dedication, and, under the authorities, transfer title as effectively and as fully as a deed of conveyance, so long and until it is revoked and set aside by the grantor. 16 Am. Jur. 363, Dedication § 19; *Ramstad* v. *Carr* (1915), 31 N. D. 504, 154 N. W. 195, 1916B L. R. A. 1160. This latter opinion furnishes an interesting discussion of a dedication or an offer to dedicate land for public use, and holds that an offer to dedicate or a tender of conveyance upon the part of the owner continues until withdrawn by him, or until it is rejected by the municipality. Even if the instrument of dedication at bar constituted only an offer, no time is fixed in which it must be accepted by the grantee. Time in all cases depends upon the circumstances as to the necessity of the use of the property and the convenience of the public to improve it or formally accept it for public use. It is pointed out in that decision that many times additions to towns or cities or highways may be dedicated to the public, the donor knowing at the time that

the public could make no immediate use of the land, but the dedication is made in the hope that in the future it will become useful, and by the use of the same by the public, the donor often hopes to realize a profit by an enhanced valuation of his land along which the highway extends. Upon the question of the acceptance of a donation see McQuillin Municipal Corporations (2nd ed.), Vol. 4, p. 576, § 1712.

It matters not, so far as appellants' rights are concerned, whether the transfer of the 100-foot strip by the grantors was a complete dedication or an offer to dedicate; the result is inevitably the same.

The title was vested in the public. It was not revoked prior to an acceptance by the state and an expenditure of a large sum of money to improve it. The proceedings instituted by the appellants for a writ of assessment were not commenced until 1938, long after the formal acceptance by the State Highway Commission. The authorities are abundant which hold that where the dedication is beneficial to the donee without imposing any burdens, acceptance will be presumed as of the date of the dedication. McQuillin Municipal Corporations (2nd ed.), Vol. 4, p. 554, § 1703; *Ramstad* v. *Carr, supra.*

It may be observed from the facts stipulated and the briefs filed on appeal that the part of the appellants' land constituting a direct line north at the point where the 100-foot strip bore to the west was regularly condemned by the state, damages were assessed and presumably paid to the appellants. At least no question is presented as to that matter. The triangular tract contained 35/100 of an acre, wholly within the 100-foot strip, and located at the point where the 100-foot strip bore to the west. The state did not condemn this tract and refused to make payment therefor, and defended

the action upon the ground that appellants duly and completely dedicated the tract to the state for public use, and that the state accepted the same and is using it for the purpose for which it was dedicated. There can be no doubt as to the correctness of appellees' position. From a review of the entire record it is apparent that the trial court reached the correct conclusion.

The judgment is affirmed.

NOTE.—Reported in 29 N. E. (2d) 786.