[Civil No. 4427. Filed July 15, 1942.]

[127 Pac. (2d) 716.]

JAMES DEAN COLLINS, HATTIE L. MOSHER and JULIA C. COLLINS, Appellants, v. W. R. WAYLAND et al., and CITY OF PHOENIX, a Municipal Corporation, Appellees.

Mr. E. E. Selden, for Appellant.

Messrs. Snell & Strouss and Mr. Mark Wilmer, and Mr. Hess Seaman, City Attorney, for Appellees.

ROSS, J.—The principal question for decision is whether a 20-foot strip running north and south through Block 1, Churchill's Addition to the City of Phoenix, between Van Buren and Polk Streets, is a public alley or is privately owned.

The appellees W. R. Wayland, Fred G. Holmes, Consolidated Motors, Inc., the City of Phoenix and C. Claude Dye insist that such strip is and was a public alley, dedicated to the public use, whereas appellants James Dean Collins, Hattie L. Mosher and Julia C. Collins, claim title to said strip is in them or one of them. The trial court found the issues thus made in favor of the appellees and entered judgment accordingly. The appellants have appealed from such judgment.

The question reached the courts when on May 18, 1938, Wayland and Holmes, owners of Lots 9, 10, 11 and 12 in said Block 1, began the construction of a building thereon and made application to the City of Phoenix for permission to make sewer connections with the city's sewer extending north and south through said Block 1. Appellant James Dean Collins there-

upon brought this action (in which he claims title to said 20-foot alley), to restrain appellees Wayland and Holmes from making the sewer connection sought. After a hearing, the court authorized said appellees to make the sewer connection with the city's sewer system and, upon a final hearing, made such authority permanent, and the question is did the court under the facts and circumstances commit error.

There are several collateral and procedural questions that require some attention later on. We now consider whether the court's decision, to the effect that the 20-foot strip through Block 1 was or had been dedicated to the public, was justified under the evidence. Preliminary to that question, will state the appellants, after a strenuous effort to avoid proceeding with the trial, although the case had been pending more than two years, left the court room and were not present during the trial and did not introduce any evidence whatever to sustain their contention that the 20-foot alleyway had not been dedicated to the public.

In *Collins* v. *Collins*, 46 Ariz. 485, 52 Pac. (2d) 1169, this court found the fact to be that although James Dean Collins held the legal title to the real property in question, the beneficial title and interest in such property was in appellant Hattie L. Mosher. We therefore, in consideration of the case, proceed on the idea that James Dean Collins, a resident of the state of Washington, is only a nominal party, the real party in interest being the appellant Mosher.

Act No. 75, Session Laws 1893, approved April 12, 1893, so far as material, reads:

"Section 1. That any incorporated city now existing in this Territory may extend, enlarge and increase its corporate limits in the manner following:

"That on presentation of a petition in writing, signed by the owners of not less than one-half (in

value) of the property in any territory contiguous to any duly incorporated city in this Territory (as shown by the last assessment of said property) and not embraced within its limits, the Common Council of said city may, by ordinance annex such territory to said city, upon filing a copy of such ordinance with an accurate map of the territory annexed, duly certified by the Mayor of said city, in the office of the County Recorder, in the county where the annexed territory is situated and have the same recorded therein.''

In pursuance of the terms of said section 1, the Common Council of Phoenix, on February 27, 1895, enacted Ordinance No. 192, by which it ''annexed to, made a part of, and included within the corporate limits of the City of Phoenix . . . for all purposes whatsoever'' what is known as Churchill Addition to the City of Phoenix, which includes, as shown by the map and plat filed therewith, Block 1 of said Churchill Addition. This map shows a 20-foot alley starting with the north line of Van Buren Street and extending thence northerly through Blocks 1, 2, 3, 4, 5, 6 and 7 to Garfield Street.

All the evidence is to the effect that the property owners, including appellants and their predecessors, facing the alley in said Block 1, for many years, when making connections with the sewer running through the middle of said block, obtained from the City of Phoenix permission to make connections therewith and that the present contentions of appellants were asserted only in connection with the city's efforts to make necessary improvements, or to enforce its lien for taxes, or in an effort to defeat the collection of county and state taxes. The owners of said Block 1, on February 27, 1895, when it was incorporated into the city by ordinance, raised no objection thereto and such order became final and binding upon property owners in said block.

■ The proceedings annexing such territory to the city appear to be regular and in conformity with the law as it existed at the time. The delineation of the alley through Block 1 on the "accurate map of the territory annexed" (section 1, Act. No. 75, Session Laws 1893, *supra*) is a dedication to the public as much as the streets shown on such map.

■ Prior to the above order of annexation, on, to wit, January 10, 1888, there was filed and recorded in the office of the County Recorder of Maricopa county a plat of a survey of Churchill Addition, of which said Block 1 was a part, and on said plat a 20-foot alleyway through said block was shown. While said plat or map was not authenticated as the statutes at that time required, it was certainly admissible as evidence of an intention of the owners of lots therein to dedicate to the public the streets and alleys delineated thereon. On such map or plat is shown a 20-foot alleyway extending through the center of said Block 1 from Van Buren Street north to Garfield Street, and an admission by the proponents thereof and those in privity, that said 20 feet was being dedicated to a public use. So, we see that said 20-foot strip, running north and south through the center of said Block 1, for over fifty years has been treated and regarded as a public alley.

In 1912 the City of Phoenix constructed a sewer system costing $400,000 and, according to a plat or map thereof on record in the Water Department of the city, a 20-foot strip (the same 20 feet dedicated in 1888 and 1895) is shown as a public alleyway. At this time the city took possession of and constructed in such alleyway a sewer, with which appellants and other property owners, by permission of the city, have since made sewer connections.

■ The evidence of the dedication of the 20-foot strip in said Block 1 to the public as an alleyway and

that such dedication was accepted by the public by actual occupancy and use is practically undisputed. This alleyway was not listed by its former owners, including Hattie L. Mosher, for county taxes from at least 1914 to 1940. In 1929, on demand of Mosher, the city assessor listed the alley to her but since that year, although it has been assessed to her, she has not paid the taxes except for the year 1937. At that time the public owned the alley and of course forfeited no rights therein through the unauthorized act of the city assessor taken at the instigation of Mosher.

If anyone had any authority to object to Ordinance No. 192 of the Common Council annexing said Block 1 to the City of Phoenix in 1895, that right ceased after the adoption of the ordinance and the acceptance by the city of such annexation, especially in view of the fact that in pursuance of such annexation the city has exercised municipal control for many years, levying and collecting taxes and treating it in all respects as an integral part of such municipal organization. *Chaves* v. *City of Atchison,* 77 Kan. 176, 93 Pac. 624; *Gardner* v. *Benn,* 81 Kan. 442, 105 Pac. 435; *Gorby* v. *Gayman,* 59 Okl. 73, 157 Pac. 939; *Mason* v. *Kansas City,* 103 Kan. 275, 173 Pac. 535; *Kuhn* v. *City of Port Townsend,* 12 Wash. 605, 41 Pac. 923; *Skinner* v. *City of Phoenix,* 54 Ariz. 316, 95 Pac. (2d) 424.

The annexation being in accordance with the law, the title and jurisdiction of the streets and alleys in the annexed territory vested in the City of Phoenix "for all purposes whatsoever." Section 1, Act No. 75, Session Laws 1893, *supra.*

We think the court was eminently correct, under the facts and law, in holding that the 20-foot alleyway in said Block 1 had been and was dedicated to the public.

Although, as above stated, the action was instituted by appellant James Dean Collins on May 18, 1938, he and those in privity with him make the point that

they were not ready for trial and that the case was not at issue when, on November 7, 1940, it was taken up by the court for trial and final disposition. On that day, when the court (Judge Arthur T. La Prade presiding) indicated no further delays would be allowed, appellant James Dean Collins filed his affidavit disqualifying such judge, who thereupon signified a willingness to call in a judge satisfactory to said Collins and his associates. Collins suggested, or at least was satisfied, to have Judge Gordon Farley of Santa Cruz county preside in the trial of the case and, the other appellants expressing no preference, Judge La Prade called Judge Farley. On November 12, the date set for trial, Judge La Prade, in open court, formally assigned the case to Judge Farley, then present, and the trial immediately followed.

It is claimed by appellants that the minute entries for change of judges show that Judge Farley assigned the case to himself and not that it was assigned to him by Judge La Prade. We have carefully examined the record and find this contention is without foundation in fact. At the instance of James Dean Collins, it was assigned by Judge La Prade to Judge Farley, who tried it.

One of the contentions of appellants was that James Dean Collins had filed, on June 3, 1940, a motion for a pre-trial of the issues of the case and that he was not afforded such pre-trial. Section 21–453, Arizona Code 1939, provides for such procedure but whether it is followed by the court is purely discretionary. It was not error to deny such pre-trial, under the circumstances.

Appellants complain that the Consolidated Motors, Inc., had not paid its appearance fee before entry of the judgment, and that C. Claude Dye had not paid his intervention fee until thirteen days after the trial and judgment. We do not feel that a failure

of a litigant to pay the clerk of the court his fees ousts the court of jurisdiction of the case.

We attach no importance to appellants' suggestion in their brief that the rights of the parties litigant are governed by the general laws of the state concerning the securing of rights-of-way for public roads. Such laws do not extend to or affect powers conferred on cities and towns to lay out and improve their streets. In this case, the City of Phoenix in 1893 was given the right and power to acquire a right-of-way in and through Block 1, Churchill's Addition, which was accepted by the city in 1895 and such right has not been affected by any general law providing for rights-of-way for public roads to be constructed in the country.

At the cost of the space and time it takes to state it, we shall allude to the tactics of appellants in endeavoring to avoid a trial of the case on its merits. These parties secured the removal of the cause to the United States District Court for Arizona, where it remained until remanded by that court and, when it reached the court from which it had been wrongfully removed, they employed more delaying tactics to avoid trial, such as disqualifying the presiding judge and compelling the selection of someone in his stead. This, it is apparent, was done for delay. When the trial reached the stage of making proof of the allegations of the pleadings, the attorney for appellant Collins (E. E. Selden) left the court room and did not again appear during the trial, as did also appellant Hattie L. Mosher, who at that time was representing herself. It therefore remained for the appellees to make proof of the allegations of their second amended cross-complaint against the appellants, which they did.

The judgment of the lower court is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.