443 P.2d 938

### CITY OF FLAGSTAFF, a body politic, Appellant,
### v.
### George BABBITT, Jr., Appellee.

Ildefonso M. and Mercedes VALLEJO, husband and wife; Eunice B. Veazey; Raymond and Beulah Cunningham, husband and wife, and George Babbitt, Petitioners,
v.
The SUPERIOR COURT OF COCONINO COUNTY; the Honorable J. Smith Gibbons; and the City of Flagstaff, Respondents.

Nos. 1 CA–CIV 458, 1 CA–CIV 633.

Court of Appeals of Arizona.

Aug. 6, 1968.

Rehearing Denied Sept. 12, 1968.

---

Mangum, Wall & Stoops, by Richard K. Mangum, Flagstaff, for appellant and for respondents.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by John H. Westover and Harry J. Cavanagh, Phoenix, for appellee and for petitioners.

STEVENS, Judge.

An appeal was perfected to this Court from *Coconino County Superior Court* Cause No. 22197 and assigned this Court's Cause No. 1 CA–CIV 458. Pending the appeal the Superior Court undertook further action in the case and a petition for a writ of prohibition was filed which was assigned this Court's Cause No. 1 CA–CIV 633. The Superior Court was restrained from taking further action pending the decision on the appeal and the two matters were consolidated for consideration.

The basic issue involved in the appeal is whether there was a proper dedication of a portion of the land included within a subdivision plat of property now located in the City of Flagstaff so as to cause this portion to become a public park as opposed to private property of the subdivider.

In 1929, the appellee, Babbitt, and one Taylor participated in the subdividing of a tract of land which was at that time outside of the City limits of the City of Flagstaff. A subdivision plat was prepared and the subdivision was designated as Mt. Elden Addition. Most of the tract was divided into designated lots, blocks, streets and alleys, but there was a parcel approximately 9 acres in size which was left blank except for the wording "Pinedale Park".

Although the subdivision was outside the city limits of the City of Flagstaff, the law in effect at the time the subdivision was created required that the plat be approved by the City Council because of its proximity to the City limits. Consequently, on 14 October 1929, Babbitt and Taylor appeared before the City Council seeking approval of the plat. The plat contained a notation in the margin stating, "The Streets, Avenues, Drives and highways as shown hereon, are hereby dedicated to the use of the public". No reference was made in the dedication concerning Pinedale Park. The City Attorney informed the council that approval by the City was merely a legal requirement due to the fact that the land was adjacent to the city; that the plat could not be recorded without approval of the city; that it in no way became an addition to the City of Flagstaff; and that it placed no obligation upon the City. Thereafter the City Council approved the plat, it being the distinct understanding that this act placed no obligation upon the City of Flagstaff.

After the subdivision was established, lot sales took place and some homes were built. The parcel designated as Pinedale Park remained unimproved and unused for many years.

In 1957 the City of Flagstaff annexed the subdivision and it all became a part of the City. In the meantime, Babbitt replatted certain tracts and encroached upon the Pinedale Park area. He built an access road to these lots and portions of this replatted area which encroached upon the park were sold by Babbitt, some sales being prior to the annexation and other sales being subsequent to the annexation.

A municipal improvement district was established in 1959 whereby sewer lines were laid in areas including the park. An easement was obtained by a private engineering firm handling the project for the city from Babbitt across the land but no assessments were ever charged to Babbitt.

As late as 1962, Babbitt was being taxed and paying taxes on the property in question. In 1962 action was taken striking the parcel from the tax rolls upon the basis that it was the property of the City of Flagstaff. On 12 March 1963, the City took action establishing San Francisco Street through Pinedale Park and caused a plat to be recorded delineating San Francisco Street which is one of the two arterial streets serving north-south traffic in the City of Flagstaff. In order to lay a foundation for San Francisco Street, the City went upon the property and dumped boulders and riprap. The present location of San Francisco Street separates approximately 16 percent of the park from the remainder.

In 1964, Babbitt filed suit asking that he be declared the owner of Pinedale Park and further asked that if the court were to find that there had been a valid and legal dedication of the park, that an injunction issue to prevent the city from extending San Francisco Street through the park, alleging that such a use of the property was not commensurate with the use of the property as a park. The City of Flagstaff counterclaimed, seeking to quiet title in the park to itself.

The action was tried to the court, sitting without a jury, on 7 December 1965. The trial court heard the matter and entered a memorandum opinion in favor of Babbitt. The trial court found that there had been no intentional dedication of the park by Babbitt and Taylor, and found further that the City of Flagstaff had rejected the plat when it refused to accept or discharge any obligation relating thereto. The trial court also expressed an opinion that the use of the property

by the city was not in conformity with the uses it would have been entitled to make of the property had the dedication been valid, but the court specifically refrained from deciding this matter because of the determination that there had been no dedication of the property.

Judgment was entered on 14 April 1966, declaring Babbitt to be the owner of the property, mandatorily enjoining the city to remove all streets from the property which the city had established and directing the city to restore the property to substantially the condition it was in prior to establishing the streets. The judgment further restrained, enjoined, and barred the city or anyone claiming under the city from the asserting of any claim, interest in, or title to the property which would be adverse to Babbitt's interest.

Appellant filed a timely notice of appeal and supersedeas bond. Subsequently, appellant moved to vacate the judgment, alleging that the appellee had failed to join indispensable parties. The trial judge ruled in appellant's favor and ordered the appellee to refile its complaint joining the parties, whereupon appellee sought a writ of prohibition from the Court of Appeals, Division One.

## JURISDICTION OF THE TRIAL COURT

The first issue which we must determine was whether the trial court had jurisdiction to vacate the judgment after an appeal had been perfected.

It is a well settled principle of law in Arizona that, when an appeal has been perfected, the trial court loses all jurisdiction of matters connected with the case except in furtherance of the appeal. Whitfield Transportation v. Brooks, 81 Ariz. 136, 302 P.2d 526 (1956); Atkinson v. Atkinson, 2 Ariz.App. 1, 405 P.2d 919 (1965). It is also true that a court which makes a void order or judgment may at any time, either on its own motion or the motion of a party, set aside

the void order or judgment. In re Estate of Milliman, 101 Ariz. 54, 415 P.2d .877 (1966). Appellant contends that the judgment of the trial court was void because of lack of joinder of indispensable parties and that the trial court had jurisdiction to set aside the judgment even though an appeal had been perfected. With this contention we do not agree.

Appellant cites Siler v. Superior Court, 83 Ariz. 49, 316 P.2d 296 (1957) as authority for the proposition that a judgment rendered in the absence of an indispensable party is void. It is true that the judgment in *Siler* was held to be void, but, under our view of the case, it was not held void for lack of joinder of an indispensable party. Rather the judgment was held to be void because the Superior Court had jurisdiction only to hear and determine the matter of transfer of a liquor license without adjudging property rights therein. The Superior Court exceeded this jurisdiction and, in doing so, rendered a void judgment.

 In Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, Volume 2, Section 516, Page 163, we find the following:

"The fact that objection of want of an indispensable party may be raised by a court on its own motion, even on appeal, creates an impression that the defect is a jurisdictional one, for ordinarily only jurisdictional defects are so treated. Indeed cases can be found which speak of the defect as jurisdictional. The weight of authority, however, is uniformly to the contrary. The matter was clearly put by the Sixth Circuit:

"'It is often said that a court of equity has no jurisdiction of a creditor's bill * * * if an indispensable party is not on the record. This is not an accurate use of the term. If the relief sought is of an equitable character, and the parties against whom it is sought are in court, it is clear that a court of equity has jurisdiction. Upon objection duly made, sometimes without objection, it should decline to proceed without necessary parties * * *; but, if it does proceed, its action is erroneous, not void.'

"It is true that the court has no jurisdiction of the absentee and that it cannot render a judgment which will bind him. But it does have jurisdiction of the existing parties and has the power to make a judgment affecting their interests. It is for discretionary reasons, not for any want of jurisdiction that the court may decline to proceed without the absentees."

We are in complete agreement with the view that a judgment rendered in the absence of indispensable parties is not void. Therefore, we hold that the trial court exceeded its jurisdiction in vacating the judgment, after an appeal had been perfected, since the judgment was not void and the action of the trial court was not in furtherance of the appeal.

 However, since the matter of indispensable parties can be raised for the first time on appeal, Barron and Holtzoff, supra, and Siler v. Superior Court, supra, we must determine whether there was a failure to join indispensable parties under Rule 19, Rules of Civil Procedure, 16 A.R.S. as it existed prior to the 1966 amendment, which will require a reversal by this Court.

## INDISPENSABLE PARTIES

In support of its motion to vacate the judgment in the trial court, the appellant submitted an affidavit of the County Assessor of Coconino County. This affidavit revealed that portions of four lots in the Mt. Elden Addition encroached upon Pinedale Park and that three of these four lots were owned by people other than the appellee, Babbitt. Believing these lot owners to be indispensable parties to the litigation, and believing the judgment to be void, the trial court vacated the judgment.

Since the rendition of the judgment below and prior to filing the writ of pro-

hibition, Babbitt quit-claimed all his right, title or interest in and to the respective portions of property he theretofore had conveyed which had encroached upon Pinedale Park. When the petition for writ of prohibition was filed in this Court, the owners of the lots encroaching upon Pinedale Park joined with the appellee in seeking the writ of prohibition, urging that their interests were not adversely affected by the judgment and further urging that the writ of prohibition issue to prevent the trial court from retrying the case.

In Bolin v. Superior Court, 85 Ariz. 131, 333 P.2d 295 (1958), the Arizona Supreme Court approved and quoted the test for indispensable parties set out in Barron and Holtzoff, Federal Practice and Procedure, as follows: (85 Ariz. at 134, 135, 333 P.2d at 297)

"* * * Indispensable parties are those who have such an interest in the subject matter that a final decree cannot be made without either affecting their interest or leaving the controversy in such condition that a final determination may be wholly inconsistent with equity and good conscience. The test of indispensability therefore is whether the absent person's interest in the controversy is such that no final judgment or decree can be entered which will do justice between the parties actually before the court, without injuriously affecting the rights of others not brought into the action."

The use of this test has been further approved by the Arizona Supreme Court in, King v. Uhlmann, 103 Ariz. 136, 437 P.2d 928 (1968).

■ Under this definition, it is apparent that the parties owning land which encroached upon Pinedale Park were indispensable parties to this litigation since they had a direct legal interest in the property involved in the controversy. However, due to the fact that these parties were not adversely affected by the judgment and have joined in this Court in support of the judgment, we do not find it necessary to reverse this case on this point. In Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, Vol. 2, Sec. 516, Page 162, it is said:

"A tenable argument may be made that if the case has already been tried, and the relief given is not prejudicial to the absent party, the objection of want of an indispensable party not raised by the existing parties to the suit, is of much less moment."

It seems to us that this same argument is tenable even if the objection of "indispensable party" is raised by an existing party to the suit and we hold that it is not necessary to reverse this case in order to protect the interests of these absent property owners.

This case is further complicated by the fact that there are attached to the appellant's opening brief, five affidavits of persons who are not parties to this litigation. These affiants state, in effect, that they bought property in the Mt. Elden Addition under the belief that Pinedale Park was a public park and they claim that this was an inducement to them to purchase property in the Mt. Elden Addition. These affiants are opposed to the judgment as rendered by the trial court because they believe that the enjoyment of their property will diminish and its value will decrease if Pinedale Park is declared to be private property rather than a public park. It is urged by the appellant that these affiants are indispensable parties to this litigation.

■ In Barron and Holtzoff, Federal Practice and Procedure, Vol. 2, Sec. 513.4, Pages 114 and 115, the following statement is made:

"A person who has no right, title, or interest in the realty which is the subject of suit is not an indispensable party to the suit."

The affiants have no legal right or title to the property. They would be proper parties to the litigation. See Allied American Investment Company v. Pettit, 65

Ariz. 283, 179 P.2d 437 (1947). However, their interest would be no greater than the interest of any other member of the public, that is, a right to enjoy the property for park purposes. We hold that this interest is too remote to make the affiants indispensable parties to this litigation.

## DEDICATION

The trial court held that there had been no dedication of the property in dispute as a public park mainly because there had been no intent on the part of the subdividers to so dedicate the property. With this holding we agree.

We have reviewed the Arizona case law on dedication and have analyzed the cases in some detail in order to determine the elements necessary to a proper dedication.

In Evans v. Blankenship, 4 Ariz. 307, 39 P. 812 (1895) the issue was presented as to whether land appearing upon a map of Neahr's Addition to the City of Phoenix as a park had been property dedicated as a public park. The land in dispute appeared on a map as a park laid out in walks, with a circle in the center, and it was in size double that of the surrounding blocks or squares. There was no other designation given to this tract in dispute except the figures 570 on its sides and 300 on its ends. There was a reference made on the margin of the map in these words: "Public grounds, 570–300." This map was filed in the office of the Maricopa County Recorder.

The court held that there had been a dedication of the park to the public because Neahr had made sales of lots of land in Neahr's Addition and these sales were made with reference to the recorded map. The Supreme Court said: (4 Ariz. at 315, 39 P. at 813)

> "These acts of Neahr show an irrevocable dedication of the land in question to the public, and the fact of recording or not recording the map makes no difference. 'The mere act of survey-

ing land into lots, streets, and squares by the owner will not amount to a dedication; yet the sale of land with reference to such plat, map, or plan, whether recorded or not, will amount to an immediate and irrevocable dedication of such streets, etc., so far as the owner is concerned'."

As to whether or not there had been an acceptance of the dedication the court said: (4 Ariz. at 316, 317, 39 P. at 814)

> "This land did not become a part of the City of Phoenix until the year 1885, but certainly it had been accepted on the part of the public by those persons who had bought lots in the addition."

There was also a question in the *Evans* case as to whether the city was estopped to claim that this was a public park by reason of its having assessed this land for municipal taxes. The court held that there was no estoppel because there had been a public dedication and even though it could not be legally assessed or taxed for State, county, or municipal purposes, erroneous actions of officials in taxing the land could not impair the rights of the public or confer rights upon the defendant.

In Thorpe v. Clanton, 10 Ariz. 94, 85 P. 1061 (1906) a map and plat had been filed in the Maricopa County Recorder's Office for a townsite by the name of Sidney. At the time of the filing of the townsite of Sidney there was no statute in force in the territory relating to the dedication of streets and alleys by the owners of property. In speaking of a dedication where there is no dedication statute, the court said: (10 Ariz. at 99, 100, 85 P. at 1062)

> "Such dedication as was made, therefore, by the platting of the land and filing of the map, and the sale of the lots according to the description as given in the map by the grantors of Thorpe, was a common-law dedication. In so far as the rights of purchasers are concerned the distinction between a

statutory and common-law dedication is unimportant, as such distinction relates wholly to the nature of the title, which is granted, and not to the right of the public or to the rights of purchasers of lots to the free and unobstructed use of streets and alleys included within the dedication. (citing case) Where a dedication has been made, whether under a statute or at common law, and accepted by the public it becomes irrevocable. Where there has been no acceptance by the public, but where the owner has sold lots or blocks according to the description given in a map or plat, such owner is universally held, upon the doctrine of estoppel *in pais*, to be precluded from revoking the dedication."

However, the court went on to hold that individuals who had purchased lots with reference to the plat showing the streets which had been dedicated to the town had no right to an injunction against the owner of land to prevent him from closing the streets unless the individuals could show that they would be specifically injured by the closing of the streets.

In Collins v. Wayland, 59 Ariz. 340, 127 P.2d 716 (1942) the issue was whether a 20 ft. strip of land in Churchill's Addition to the City of Phoenix between Van Buren and Polk Streets was a public alley or privately owned. Prior to annexation of the subdivision by the City, there was filed and recorded in the office of the Recorder of Maricopa County a plat of a survey of Churchill Addition, of which block I was a park, and on the plat a 20 ft. alleyway through the block was shown. The court said: (59 Ariz. at 344, 127 P.2d 716)

"On such map or plat is shown a 20-foot alleyway, extending through the center of said block I from Van Buren Street north to Garfield Street, and an admission by the proponents thereof and those in privity, that said 20 feet was being dedicated to a public use. So, we see that said 20-foot strip, running north and south through the center of said block I, for over fifty years has been treated and regarded as a public alley."

Therefore it appears that on the plat itself the land owners had specifically designated the alleyway as being dedicated to a public use. Based on this evidence, the court had no difficulty in finding that there had been a dedication of the alleyway to the public and that the alleyway was public property rather than private property after the annexation of Churchill Addition by the City of Phoenix.

Allied American Investment Company v. Pettit, 65 Ariz. 283, 179 P.2d 437 (1947) appears to be one of the leading cases in Arizona on dedication. The action was brought by appellees for the purpose of securing an adjudication that block 5 of Willow Addition, Maricopa County, Arizona, was a public park, and to enforce the asserted right of appellees and others similarly situated to use the block for public park purposes. The trial court held that the area designated as a "park" was a public park.

In 1913, Phoenix Title and Trust, trustee, caused a plat of Willow Addition to be recorded in the office of the County Recorder of Maricopa County, on which plat block 5 was marked "Park". The plat contained a formal dedication of the streets and alleyways shown thereon but made no reference in specific words to any attempted dedication of block 5 as a park. The property was not within any city or town and the entire addition was used for farming purposes as late as 1924 or 1925. Thereafter lots in the addition were sold and reference was made to the recorded plat in effecting such sales. For many years nothing was built on block 5, though children played on it from time to time. Several purchasers of lots testified that they were induced to buy lots by virtue of the fact that block 5 was designated as a park on a plat exhibited at the time of their purchase.

The appellant contended that the formal dedication of the streets and alleys upon the plat filed in the office of the County Recorder negatived any intention to dedicate block 5 as a public park. The Arizona Supreme Court rejected this contention and stated: (65 Ariz. at 287, 289, 290, 179 P.2d at 439, 441)

"Dedication is the intentional appropriation of land by the owner to some proper public use. (citing case) The intention of the owner to set aside lands or property for use of the public is the foundation and life of every dedication.

* * * * * *

"Appellant has recourse to the rule 'expressio unis est exclusio alterius.' In other words, its contention is that the Phoenix Title and Trust Company, as trustee, having specifically dedicated to the use of the public the streets and alleys indicated on the plat no other dedication was included or could be included, and this regardless of the fact that the recorded plat had printed on block 5 the word 'Park.' * * * The question here presented is: Did the dedicator in the instant case by inscribing the word 'Park' on Block 5 comply with this paragraph (referring to paragraph 5313 C.C. 1913, on dedication) wherein it says that the 'owner shall by proper dedication, dedicate the avenues, streets, parks' etc.

"We are of the opinion that the entire plat as filed, showing some 17 blocks, 11 streets, numerous alleys, and hundreds of lots, with their specific locations, dimensions, and boundaries, together with the block labeled 'Park,' constitutes the entire dedication. * * The making and recordation of the plat coupled with sales of lots therein constituted the dedication. Evans v. Blankenship, supra. The use by the purchasers of lots and the general public constituted a sufficient acceptance. (citing case) By the statutes in effect at the time the dedication was made,

the fee in the dedicated property passed to the county in trust for the public and for the uses described."

In Edwards v. Sheets, 66 Ariz. 213, 185 P.2d 1001 (1947) the holding in the Allied American Investment Company v. Pettit case was expressly approved by the Arizona Supreme Court and it was once again stated that the making and recordation of a plat coupled with sales of lots therein constituted a dedication.

In City of Phoenix v. Landrum & Mills Realty Company, 71 Ariz. 382, 227 P.2d 1011 (1951) the City of Phoenix had acquired the fee to certain property in 1881 from the then probate judge with no restrictions as to its use. In 1885 a map or plat was filed in the office of the County Recorder by persons unknown with the property in question marked on the plat as a plaza. The Supreme Court held that there was no dedication of this plaza and distinguished the Allied American Investment Company v. Pettit case as follows: (71 Ariz. at 386, 227 P.2d at 1013)

"Appellants contend under the rule laid down in Allied American Investment Co. v. Pettit, 1947, 65 Ariz. 283, 179 P.2d 437, that this property has theretofore been dedicated as a plaza or a park. The Allied American Investment case recognized the doctrine of dedication by plat but it rests upon the statutes in effect at the time of that recordation. * * * In this case the recordation took place in 1885 whereas the statutes relied upon in the Allied American Investment case became effective in September 1901.

"The case of Evans v. Blankenship, 1895, 4 Ariz. 307, 39 P. 812, which also recognizes the general doctrine of dedication by plat does not aid appellants here. Dedication is the intentional appropriation of land by the owner to some proper public use. The intention of the owner to set aside lands or property for the use of the public is the foundation and life of every dedica-

tion. Allied American Investment Co. v. Pettit, supra.

"The appellee contends and it is not controverted that the making and recordation of the map and plat in 1885 was done by persons unknown. In 16 Am.Jur. Dedication, § 22, P. 366, it is stated: 'Where the plat is recorded without the owner's signature or knowledge (or, we might add, authority), it is ineffective, so that if later the owner files another plat leaving a blank space where the dedicatory words were written on the former plat, the recorder is not justified in writing in such words on the new plat to conform to the old one.'

"The burden of proof to establish a dication is on the party asserting it and nowhere is it shown that the making and the recordation of the plat in this instance was done by the city or its authority. Dedication is not presumed nor does a presumption of an intent to dedicate arise unless it is clearly shown by the owner's acts and declarations. On the facts presented by appellants, we cannot say that a dedication was made."

In Drane v. Avery, 72 Ariz. 100, 231 P.2d 444 (1951) the court said: (72 Ariz. 102, 231 P.2d 445)

"It is well settled in this jurisdiction that the making and recordation in the county recorder's office of a city addition plat, showing lots, blocks, dimensions thereof and width of all streets coupled with sales or (sic) lots therein, constitutes a 'dedication' of such streets, and use thereof by purchasers of lots and the general public constitutes sufficient acceptance of the dedication, by which fee in the dedicated property passes to the county in trust for the public and the described uses. Edwards v. Sheets, 66 Ariz. 213, 185 P.2d 1001; Allied American Investment Co. v. Pettit, 65 Ariz. 283, 179 P.2d 437, and cases cited therein."

The statement made in Drane v. Avery was reaffirmed in Avery v. Drane, 77 Ariz. 328, 271 P.2d 480 (1954).

In County of Yuma v. Leidendeker, 81 Ariz. 208, 303 P.2d 531 (1956) the stipulated facts showed that in 1905 William Thomas caused a plat to be made of some real property in Yuma County and subdivided it into blocks, streets and alleys. In the same year the plat was recorded in the office of the County Recorder of Yuma County as the Thomas Addition to the City of Yuma. The plat included a reference to block 7 of the subdivision, the property in controversy, which read as follows:

" * * * Block 7 as shown on said plat is hereby dedicated to public use forever, for park and public building purposes only."

The Thomas Addition was not within or contiguous to the corporate limits of the City of Yuma at the time the plat was recorded. At the time that this litigation arose it was contiguous to but not within the corporate limits.

In holding that there had been a proper dedication the court held that the statute on dedication contemplated the common law mode of dedication that had been set forth in Evans v. Blankenship and said: (81 Ariz. at 213, 303 P.2d at 535)

"The rule in that case was to the effect that the mere act of surveying land into lots, streets, and squares by the owner, and the recordation of such plat, constituted an offer to dedicate and was subject to revocation by the dedicator until it was accepted, but the mere act of selling lots with reference to such plat resulted in an immediate and irrevocable common law dedication of areas delineated thereon for public purposes. (citing cases)"

There had been a non-user of block 7 which had been dedicated for park and public building purposes for forty years and the appellee contended that this non-user constituted an abandonment of any dedication which may have resulted. The

court said that it is the general rule that abandonment does not result from mere non-user after a dedication is complete. The court went on to say: (81 Ariz. at 215, 303 P.2d at 536)

> "It is fair to assume that since 1946 the twenty-four householders in the subdivision have been using some of the dedicated streets and alleys, and that there will be use of the park when more families take residence therein. It will be presumed as a matter of law that the dedication contemplated this state of things, and imposed no condition on the public to use the park until the public wants required its use."

In Moeur v. City of Tempe, 3 Ariz. App. 196, 412 P.2d 878 (1966) it was said referring to the 1901 Code: (3 Ariz. App. at 199, 412 P.2d at 881)

> "It is clear that paragraph 611 provides for a statutory dedication. In this jurisdiction, it is well settled that the making and recording in the county recorder's office of a plat showing lots, blocks, dimensions thereof and width of all streets coupled with the sale of lots therein, constitutes a dedication of such streets, and use thereof by purchasers of lots and the general public constitutes sufficient acceptance of the dedication, by which the fee in the dedicated property passes to the county in trust for the public for the uses therein described. (citing Edwards v. Sheets; Allied American Investment Company v. Pettit; Drane v. Avery.)"

A reading of these cases would indicate, at first glance, that there had been a dedication of Pinedale Park when the plat was recorded and lot sales were made with reference to the plat. However, the present case differs in one very important respect from the above cited cases. In none of the above cited cases did the subdivider appear as a party nor was any substantial evidence presented as to the intention of the subdivider. The courts in the above cited cases were required to resort to rules of construction in order to determine the intent of the subdividers where this intent was not clearly expressed on the plat and there was no evidence of the actual intent of the subdivider.

The foregoing Arizona cases indicate that where the subdivision or townsite has been platted and sales made with reference to the plat, a dedication is presumed in regard to all areas which appear to be labeled as public areas, whether or not these areas are specifically dedicated to the use of the public by appropriate wording. However, the cases also indicate that the primary concern of the courts is to determine the intention of the subdivider. If the intention of the subdivider is inconsistent with the presumption of dedication, then the intention prevails over the presumption.

We hold the rule to be that there is a presumption of dedication arising from the plat. If the plat contains words of dedication specifically identifying the areas which are dedicated the presumption cannot be rebutted. Where, as here, there were no words of dedication with reference to Pinedale Park, the presumption may be rebutted and the presumption may be weighed against affirmative evidence to the contrary. This creates a fact situation for the trial court to resolve.

In the present case we have the following situation in regard to the intent of the subdivider: The subdivider appeared and testified that he did not intend to dedicate Pinedale Park to the public; the dedicatory wording on the recorded plat did not include the park; a quiet title action was filed by one of the subdividers three days after the plat in question had been filed with the city including the property in question; the subdivider established and graded streets and replatted lots in a portion of Pinedale Park; the subdivider executed an easement for a sewer line to the City of Flagstaff across the park and paid taxes on the property. We hold that these actions of the subdivider were inconsistent with

an intent to dedicate the park to the public and were consistent with an intent to retain the property as private property of the subdivider. We further hold that the presumption of dedication was rebutted by the evidence of actual intent of the subdivider and that no dedication of the park was intended or actually effected.

Judgment affirmed.

DONOFRIO, Acting C. J., concurs.

WILLIAM W. NABOURS, Superior Court Judge (dissenting):

I must respectfully dissent from the conclusion arrived at by the majority in affirming the decision of the trial court.

The majority apparently base their decision upon this point, to wit: "The trial court held that there had been no dedication of the property in dispute as a public park mainly because there had been no intent on the part of the subdividers to so dedicate the property." They then cite all of the Arizona cases on this subject and conclude by saying: "A reading of these cases would indicate, at first glance, that there had been a dedication of Pinedale Park when the plat was recorded and lot sales were made with reference to the plat. However, the present case differs in one very important respect from the above cited cases. In none of the above cited cases did the subdivider appear as a party nor was any substantial evidence presented as to the intention of the subdivider. The courts * * were required to resort to rules of construction in order to determine the intent of the subdividers where this intent was not clearly expressed on the plat and there was no evidence of the actual intent of the subdivider." The majority then go on to say: "However, the cases also indicate that the primary concern of the courts is to determine the intention of the subdivider. If the intention of the subdivider is inconsistent with the presumption of dedication, then the intention prevails over the presumption. * *

Where, as here, there were no words of dedication with reference to Pinedale Park, the presumption may be rebutted and the presumption may be weighed against affirmative evidence to the contrary."

The question of whether or not there was a dedication must be determined as of the date when the dedication was or was not made. In this case that action was in the year 1929 and not three, twenty-five or thirty-five years later.

In 1929 the subdivision plat was prepared. This plat provided for streets and alleys and an area approximately nine acres in size designated as "Pinedale Park". At the time the plat was filed the area was not within the city limits of the City of Flagstaff and did not become a part of that city until 1957. At the time the plat was filed the City was very concerned with the question of their obligation to the subdivision and were assured that no obligation was placed upon the city. In 1957 the area was annexed and became a part of the City of Flagstaff. No question has been raised as to whether there was or was not a legal dedication of the streets and alleys even though the city council at the time the plat was filed expressly stated that they would not accept any obligation.

This case does not involve the dedication of a street or alley but the dedication of a public park. The application of the law to these two different situations is different and it is this difference that I believe the majority have overlooked.

In the case of McKernon v. City of Reno, 76 Nev. 452, 357 P.2d 597, the Nevada Supreme Court has very plainly explained the law governing this situation. The Nevada court pointed out that: (357 P.2d at 600)

"In the dedication of a street a burden is placed upon the city. The improvements upon a dedicated park are left to be made by those who are interested. The city may take it up, or it

may be left to individuals. The resulting public benefit may result simply from leaving space for air or unobstructed view. Attorney General v. Abbott, 154 Mass. 323, 28 N.E. 346, 13 L.R.A. 251. It is such theory that developed into the rule enunciated in Smith v. State, 217 Ind. 643, 29 N.E.2d 786, 791, where the court said: 'The authorities are abundant which hold that where the dedication is beneficial to the donee without imposing any burdens, acceptance will be presumed as of the the date of the dedication. McQuillan Municipal Corporations, 2nd Ed., Vol. 4, p. [771] 554, § 1703; Ramstad v. Carr, [1915, 31 N.D. 504, 154 N.W. 195, L.R.A. 1916B, 1160].'

"In the last-named case the court, after noting the general propositions that a dedication is in the nature of a grant, that a grant does not become effective until accepted by the grantee, that such acceptance need not be by formal or express words but may be by acts or conduct, says: 'It is also true, as a general rule, that delivery of a grant implies its acceptance by the grantee, * * * and acceptance of a grant beneficial to the grantee may be presumed. This is especially true where it conveys valuable property, and creates no obligation or burden to be assumed by the grantee.' [31 N.D. 504, 154 N.W. 202]."

The majority opinion recognizes that there are two methods of dedication, the statutory and the common-law. In this case we are concerned only with the common-law. It is also recognized that in the absence of an acceptance a dedication is in law merely an offer to dedicate, and that an offer to dedicate does not become binding until the offer is accepted. The McKernon case, supra, points out four exceptions to this rule, two of which are: "where a dedication is by sale of lots with reference to a plat showing dedications, in which case the weight of authority holds that no acceptance is necessary, City of Santa Clara v. Ivancovich, 47 Cal.App.2d 502, 118 P.2d 303. * * * The fourth exception is the one we have first noted, that where a dedication is beneficial to a donee without imposing any burden, acceptance will be presumed as of the the date of the dedication."

The testimony of the original subdivider as to what his intention was in 1929 at the trial in 1965 is immaterial and can only be self serving. There should be no different rule of law governing the dedication of a park where the original subdivider is deceased or unavailable from that where the original subdivider is living, available, owns the property and has an interest in setting aside the property to himself or a successor in interest. As stated above, the dedication was complete in 1929. The facts of this case give no cause to upset the holdings in the prior Arizona decisions upon the same matter. The actions of the subdivider or the city once the grant has passed to the public are immaterial. Whether or not the parties were right or wrong in assessing taxes or not assessing sewer assessments or seeking easements or striking the land from the tax roll is immaterial. These acts can neither take away the life or breathe life into the dedication. As the Nevada court said in the McKernon case, supra, "the dedication is to the public and that the public is an everexisting grantee, capable of taking a dedication for public use."

It is my opinion that the judgment of the lower court should be reversed and the case remanded for further necessary proceedings because of the judgment heretofore entered. At that time all necessary and proper parties could be brought into the action.

NOTE: Chief Judge JAMES DUKE CAMERON having requested that he be relieved from the consideration of this matter, Judge WILLIAM W. NABOURS of the Superior Court was called to sit in his stead and participate in this decision.