## SCHNEIDER *v.* TOWN OF PRINCES LAKE.

[No. 1167A101. Filed June 24, 1969. Rehearing denied July 2, 1969.]

*Thomas L. Davis* and *Robert T. Buehl,* of Indianapolis, for appellants.

*James D. Acher* and *R. M. Gholston,* of Franklin, for appellee.

WHITE, J.—Appellee, Town of Princes Lake, operates the utility which furnishes water to the owners of lots in the town. Appellants are the owners of lots E-68, E-69 and the south half of E-70 fronting on North Lake in said town. Appellants' lots are improved by a dwelling house and other structures. In the spring of 1966, during the absence of appellants, the appellee dug a trench through appellants' property on the boundary line between lots E-69 and E-70 which is north of appellants' house, buried a ¾ inch plastic water pipe, and refilled the trench. That water line did not serve appellants' property which was already served by another line.

Appellants as plaintiffs commenced an action seeking to have appellee-town "enjoined to remove said pipeline" and to recover judgment of $1,000.00 for damages. Appellee answered appellants' amended complaint in one paragraph, principally in denial, pursuant to Supreme Court Rule 1-3. No affirmative defense was pleaded. Trial was by court and culminated in a general finding against appellants and for appellee and a judgment in these words:

"It is therefore ordered, adjudged and decreed by the Court that the plaintiffs take nothing by their complaint.
"Costs versus the plaintiffs."

Appellants' motion for new trial on the separately stated grounds that the court's finding is not supported by sufficient evidence and is contrary to law was overruled. The overruling of that motion is the error assigned on this appeal.

The evidence at the trial showed without dispute that appellants gave no permission for the laying of the pipeline across their property and were unaware of any plan or intent to lay it there until after the work was completed. Also, without dispute, it was shown that the recorded plat of the area in which appellants' lots are located bears on its margin these words (among others):

"lots shall be confined by the solid boundary lines as shown, except that an 8' service easement shall exist down all lot

lines, and that water front lots shall extend 15′ into the lake unless otherwise shown".

The evidence is also undisputed that appellee relied on the advice of its attorney that it had a right by virtue of an easement to lay the pipeline across appellants' property on the line between lots E-69 and E-70. No other purported easement was offered in evidence and it is fairly clear that the above quotation from the plat is the "easement" on which appellee relied.

Appellant here takes the position that the trial court's finding and judgment for the defendant was a finding and judgment that the above quoted " 'service easement' reserved in the plat of the land allowed the defendant's [appellee's] Water Utility to corss (sic) the plaintiffs' [appellants'] land without plaintiffs' consent and without payment of damages".

Appellants' brief sums up appellants' contention thus:

> "The alleged easement may well be too vague for enforcement under the doctrine of LENNERTZ and ROSS cases, supra. However, plaintiffs [appellants] submit this is not the case.
> "Plaintiffs say the easement means just what it says. It is an easement for service lines to the owners of the lots, the servient tenement. It is not an easement which may be availed of for pipelines which in no way serve the servient tenement, such as the pipeline in this case. * * * An easement for limited purposes cannot be converted into an easement for general purposes at the election of the dominant tenement."

Appellee points out that the trial court's finding was general and he made no finding which interpreted the purported easement. And after carefully reading the briefs of both parties, the writer is unable to say why the trial court denied appellant any relief. The evidence as to damages was conflicting and the learned judge could well have found that even though there was a technical trespass, appellants had sustained no actual damages. He could also well have found, in his discretion, that appellants would suffer no continuing actual dam-

ages or inconvenience if the pipeline was allowed to remain, and that, therefore, the expense and inconvenience of removing and relocating the pipeline on a purchased or condemned right-of-way rendered it inequitable to require its removal.

In this connection it may be noted that appellant Lawrence Schneider testified that he wants the Water Company to leave the pipe where it is but to cut it off at both ends to avoid digging it up and doing more damage. This testimony followed his testimony that he intended to extend his driveway over into Lot E-70 and build an automobile turn-around there. This would necessitate excavation which he was certain would tear into the pipeline.

The trial court was not required, of course, to accept appellants' conclusion that the risk of damage to the pipeline was so great as to prevent appellants' full enjoyment of their property by rendering their contemplated improvement too hazardous.

On the state of the record we have here, it would be merely adding *obiter dictum* to this opinion to attempt to state the legal effect, if any, of the purported easement on the correlative rights, duties, privileges, and immunities of the parties with respect to the continued existence of the pipeline on appellants' property. Reliance on *dictum* is alway hazardous and the want of adequate authority (which counsel for both parties agree cannot be found) to guide such a decision renders its value even more questionable in this particular case.

Of course, if there was a trespass, which is to say, if the appellee laid the pipe through appellants' property without the right to do so, but without causing appellants any actual damage, they would, nevertheless, be entitled to recover nominal damages. *Indiana Pipe Line Company* v. *Christensen*, 188 Ind. 400, 407, 123 N. E. 789 (1919). But in *Green* v. *Macy*, 36 Ind. App. 560, 566, 76 N. E. 264 (1905), it was held:

"Even if it be conceded that appellant was entitled to nominal damages, we cannot reverse the case for failure to assess such damages."

Judgment affirmed. Pursuant to Ind. Acts 1881 (Spec. Sess.) ch. 38, § 652, being also Burns Ind. Stat. Ann. § 2-3237, the appellee shall recover costs.

It is so ordered.

Pfaff, C.J., concurs.

Sharp, J., concurs in result.

Hoffman, J., concurs with opinion in which Sharp, J., concurs.

### CONCURRING OPINION.

HOFFMAN, J.—While I concur in the result reached by the majority opinion in this case, I believe that the plat notations were sufficient to create the easements, and that the grants were sufficiently specific.

In *Wischmeyer* v. *Finch,* 231 Ind. 282, at pages 286, 288-89, 107 N. E. 2d 661 (1952), Judge Bobbitt, speaking for our Supreme Court, said:

"[T]he recording of a plat of a subdivision is notice to the world of the dedication of streets and alleys *and of the restrictive covenants therein contained.* (Citing authorities.)

\* \* \*

"There are two methods of creating restrictions upon the use of property. One is by express covenants contained in the deed, and the other is by a recorded plat of the subdivision and a purchaser buys lots in the subdivision with reference to the plat. (Citing authorities.)

"This court has held that when lands are conveyed according to an official plat of their survey, *the plat with its notes* becomes as much a part of the grant or deed by which they are conveyed, and controls the same as if they were inserted in the deed or grant. (Citing authorities.)

\* \* \*

"The sale of said lots \*\*\* served as a *dedication of the streets and of the utility strips,* and it could not accept the benefits of the survey of the plat, and the street and utility strips, without accepting whatever burden the restrictions might impose.

\* \* \*

"*This right is not abrogated nor is there any modification of such restrictions by the failure to mention them in the*

*instrument of conveyance from a common owner to any person who may acquire a lot or lots after the plat has been recorded."* (Citing authorities.) (Emphasis supplied.)

The rules aptly stated by Judge Bobbitt have been upheld in *Northern Ind. Pub. Serv. Co.* v. *McCoy et ux,* 239 Ind. 301, 157 N. E. 2d 181 (1959).

In addition to this case authority, Acts 1905, ch. 129, § 246, p. 219, § 48-801, Burns' 1963 Repl., provides in pertinent part:

"Every donation or grant to the public, or to any individual, religious society, corporation or body politic, noted as such on such plat, shall be considered a general warranty to the donee or grantee on such plat named or indicated, for the purposes intended by the donor or grantor."

An easement can be created by plat notation and a grantee takes subject to it. See also the statement in *The John Hancock Mutual Life Insurance Company* v. *Patterson,* 103 Ind. 582, 2 N. E. 188 (1885), to the effect that an easement can properly be created by plat reference.

A second contention must be considered—that the plat notation was too vague.

A reasonable construction of the words, ". . . an 8' service easement shall exist down all lot lines . . . .", indicates that four feet of such easement would fall on each side of the boundary line.

In *Shedd* v. *American Maize etc., Co.,* 60 Ind. App. 146, 150, 108 N. E. 610 (1915), an easement was conveyed which provided,

". . . for a right of way under their land, lying between the lands so conveyed and the shore of Lake Michigan to connect the land with Lake Michigan by two pipelines of iron, vitrified tile or cement, 'to be not less than twenty-four inches in diameter and to be laid so that the tops thereof should be at least one foot below the Chicago City *datum'*. . . ."

And, further, at pages 157-158,

> "The dispute is as to the location and direction of the pipe line from the point near the shore where the portion of the line first laid ended. ***
>
> "The rules for the location of an easement granted, but not definitely located, are applicable here. *** The interested parties under such a grant may make any reasonable location of the easement on the property over which it is to extend, so long as they do not encroach upon or interfere with other property."

In the case presently before us, the grants (plat notation) spell out with much greater specificity the location of the easement. From the plat notation the location of the easements are definite and leave no doubt as to their location.

Appellants contend that "service easement" indicates a use limited to service for the benefit of the servient tenant only.

It is unnecessary for a landowner to create an easement lying wholly within his own property, the purpose of which is only to provide utility services for his property. The general purpose of an easement for the furnishing of various utility services is to provide a method of crossing property with utility facilities for the use of others.

A sound construction of the words, "service easement", indicates a meaning analagous to "utility easement"—"utility strips"—an easement for the various *services* provided by the town to the inhabitants of the subdivision.

In *Claxton* v. *Johnson County*, 20 S. E. 2d 606, 610, (Ga., 1942), the court noted:

> "The word 'service' has different meanings. *** It is also commonly used to denote the furnishing of water, heat, light, and power, etc., by public-utility companies."
>
> See also: *Central Power & Light Co.* v. *State*, 165 S. W. 2d 920, (Tex., 1942); *Coe* v. *Zwetchkenbaum*, 153 A. 2d 517, (R. I., 1959).

In view of the context in which the words appear, the descriptive words "service" and "utility" indicate the same function for the easement.

Sharp, J., concurs.

NOTE.—Reported in 249 N. E. 2d 508.