CITY OF NEW HAVEN, INDIANA *v.* INDIANA SUBURBAN SEWERS, INC., ET AL.

[No. 371A58. Filed October 2, 1972. Rehearing denied November 27, 1972. Transfer denied March 26, 1973.]

*Arthur H. Fruechtenicht,* of Fort Wayne, *Robert J. Parrish,* of Fort Wayne, *Leigh L. Hunt,* of Fort Wayne, for appellant.

*Paul W. Philips, R. David Boyer, Helmke, Philips and Beams,* of Fort Wayne, *Frederick J. Frosch, Gemmer & Frosch,* of Indianapolis, *Richard W. George, Bloom and Bloom,* of Fort Wayne, for appellees.

WHITE, J.—For several years prior to mid-July, 1970, the Town, now City, of New Haven (hereafter "New Haven") received into its sanitary sewer and sewage disposal system the sewage collected by the sanitary sewers in an unincorporated residential area known as Meadowbrook or Meadowbrook Addition. New Haven also maintained the Meadowbrook sewers which had been constructed by the Meadowbrook developer. New Haven collected a monthly charge from each residence so served.

Sometime prior to May 1, 1968, residents became dissatisfied with New Haven's service, particularly a proposal to increase the charge made for it. On that date Meadowbrook Community Association, Inc. (hereafter "Association") describing itself as "a duly incorporated civic association, which represents in civic and utility service matters its member residents who reside in . . . [Meadowbrook]" entered into an agreement with Indiana Suburban Services, Inc., (hereafter "Suburban"), a rural sewage disposal company, for the latter to render disposal service to Meadowbrook. Since Suburban's franchise territory did not include Meadowbrook (but extended to the Meadowbrook boundary), the Association agreed to construct a connecting line from the Meadowbrook collection system to Suburban's franchised area and to be responsible for billing and collecting monthly charges from the individual users. Suburban agreed to accept Association "as a proper entity situated outside of the franchised territory which will be qualified to receive sewage disposal service at

the approved bulk rate," Suburban to be responsible to maintain the Meadowbrook system.

When the connecting line was under construction and the change to Suburban became imminent, New Haven filed a complaint to enjoin Suburban (and its subsidiary Suburban Service), the Association, and various contractors from interfering with continued service by New Haven. The complaint alleged, *inter alia,* "that the sewers in Meadowbrook and environs . . . are owned and maintained by the plaintiff and are a part of the municipal sewage system owned and operated by plaintiff." A restraining order, later a temporary injunction, was issued. The temporary injunction was afterwards dissolved, and finally, after trial, a permanent injunction was denied. Shortly before trial New Haven requested leave to amend its complaint to include a prayer that it be declared the owner of the Meadowbrook sewers and that defendants be adjudged to have no right, title or interest in said sewers. Leave was denied. That denial is not assigned as error in the appeal.

On trial, at the conclusion of the plaintiff's evidence, defendant moved for dismissal and judgment pursuant to Trial Rule 41(B). The court sustained the motion and rendered judgment for defendants. Findings made by the court include the following:

"1. Plaintiff City of New Haven, as the complaining party seeking equitable relief by way of injunction from this Court, has the burden of proof and must establish as the minimum basis thereof that (i) it has a property right or ownership interest in the subject sewer system in the Meadowbrook Additions; (ii) that defendants, or some of them, have committed, or are threatening to commit a wrongful act in regard to plaintiff's property right or ownership interest; (iii) that as a result of such wrongful act of defendants, or some of them, plaintiff's property right or ownership interest will be irreparably damaged; and (iv) that plaintiff has no adequate remedy at law.

"2. Plaintiff City of New Haven is a municipality which has extended its municipal sewer lines beyond its corporate limits and permitted the developers of the rural sub-

divisions known as the Meadowbrook Additions to connect the sewer system which said developers paid for and constructed in said subdivisions, to plaintiff's municipal sewer system, and that plaintiff has thereafter rendered sewage disposal service to said rural subdivisions; that while plaintiff City of New Haven has statutory authority to make such extension of its lines outside of its corporate limits, it does not thereby acquire any exclusive right to render such service to such rural area or to be free of competition therein by any other public utility; that plaintiff City of New Haven did not follow the statutory procedure provided by Burns Section 48-3939 for acquiring title to said sewer system in said rural Meadowbrook Additions; that accordingly, plaintiff City of New Haven which did not build or pay for said sewer system, has not only failed to prove that it has any property rights or ownership interest in said sewer system in said rural Meadowbrook Additions, but to the contrary has conclusively proven that it did not construct, buy or acquire title to said sewer system by any other means, and the Court finds that plaintiff City of New Haven does not own or have a protectable interest in said sewer system.

\* \* \*

"7. Since plaintiff City of New Haven does not have any property right or ownership interest in the sewers of the Meadowbrook Additions which is entitled to protection by a Court of equity, and since none of the defendants are committing any wrongful act in regard to any protectable property interest of plaintiff City of New Haven, plaintiff City of New Haven has not proven any irreparable injury.

"8. The Court specifically finds in terms of Trial Rule 41 (B) that considering all the evidence and reasonable inferences therefrom in favor of plaintiff to be true, there is no substantial evidence of probative value to sustain the material allegations of plaintiff's complaint and supplemental complaints, and that plaintiff has, accordingly, failed to prove a prima facie case which would require the defendants to proceed and offer any evidence."

Finding No. 8, it will be noted, recognizes that under Trial Rule 41 (B) the court can grant defendants' motion and dismiss the action only if "considering all the evidence and reasonable inferences therefrom in favor of . . . [plaintiff] to be true, there is no substantial evidence of probative value to sustain the material allegations of . . . [plaintiff's complaint]."

*Ohio Casualty Insurance Company* v. *Verzele* (1971), 148
Ind App. 429, 267 N. E. 2d 193, 24 Ind. Dec. 695. See also
*Mamula* v. *Ford Motor Company* (1971), 150 Ind. App. 179,
181, n. 1, 275 N. E. 2d 849, 851, n. 1, 28 Ind. Dec. 110, 113,
n. 1. Therefore, we give effect to finding No. 8 by reading
No. 2 and No. 7 as saying that "[there is no substantial
evidence of probative value before the court from which it
can find] that plaintiff City of New Haven . . . has any
property right or ownership interest in said sewer system
in said rural Meadowbrook [or from which it can find that]
plaintiff City of New Haven . . . [has] any property right
or ownership interest in the sewers of the Meadowbrook
Addition which is entitled to protection by a court of equity."

To determine whether there is, in fact, any substantial
evidence of probative value from which the trial court could
have found that New Haven had a protectable interest, we
have carefully examined every item of evidence called to our
attention by New Haven to support its assertion that it made
out a prima facie case in that respect. Having made that
examination we find no reason to disturb the trial court's
judgment.

The evidence relevant to the issue of whether New Haven
acquired in the Meadowbrook area sewers any interest which
may have given it a right to continue furnishing sewage
disposal service to that area, against the wishes of the sewer
users therein, is meager to say the least. It is fair to say,
however, that correspondence emanating from the developers,
from New Haven, and from the State Board of Health estab-
lish that sale and occupancy of dwelling houses in the area was
contingent on the sanitary sewers therein being connected
to New Haven's disposal system and being serviced by New
Haven. New Haven was required to, and did, enlarge its
facilities to accommodate the increased burden, floating a bond
issue to finance the expansion. The correspondence in evidence
is obviously not the whole of the communications between the
developers and New Haven relative to the Meadowbrook

sewers and sewage service by New Haven, but the blanks were never filled in.

The first letter in evidence was written in 1955, apparently by New Haven, to Industries Building Corp., advising that "we cannot approve your request for sewer service" for Meadowbrook Addition, but that "city water" could be used. The next dated letter by New Haven appears to have been written March 5, 1958, to the same corporation. New Haven therein promises to accept maintenance of sewer and water lines in "Meadowbrook—Section 5, when they are satisfactorily installed." In the meantime, however, the New Haven Town Board had entered minutes of meetings on its records under dates, as follows:

"March 5, 1956

\* . \* \*

"Motion made by Harold Parker and supported by John Heiny, that agreement be entered into with the General Industries, Inc., granting the permission to make 100 residential sanitary sewer taps to the New Haven sewer system. Motion carried. The Town Attorney is to be notified to draw an agreement to be signed by General Industries, and the Town of New Haven.

"Since a recommendation has been received from the State Board of Health that New Haven provide additional facilities to its sewage disposal system, the Board discussed at some length the possibilities, and a motion was made and seconded to have Engineer Ness Zurbach make necessary estimates and plans for the expansion of the sewer system. Motion carried."

\* \* \*

"October 1, 1956

\* \* \*

"Moved by David Herbst and supported by Harold Parker that the engineer report to General Industries that the Board approves 156 additional sewer taps upon the final approval of the State Board of Health. Motion carried."

\* \* \*

There is no evidence (and no contention) that the "agreement" the town attorney was "to be notified to draw" was

ever executed, or that any other express contract was ever entered into by and between New Haven and the developer. There are in evidence, however, five letters from New Haven to developers, bearing dates ranging from February 26, 1959, to May 15, 1963, in which New Haven states that "we . . . approve and accept . . . for perpetual maintenance" sewers specified by subdivision name and lot numbers. There is a sixth letter, undated, in which "we [New Haven] hereby accept the sewer and water lines . . . and agree to maintain same."

There is no letter or other instrument in evidence by which any builder of any sewer purports to "turn over" any sewer to New Haven or to transfer any interest of any kind in any sewer to New Haven. Nor do we find any writing in which, as New Haven contends, any builder requested that New Haven "take over . . . and perpetually maintain" any sewer. There are two letters from the State Board of Health to the developer in which approval of sewers is made conditional on the Town of New Haven making "necessary plant additions" and agreeing to permit connection and to "provide the necessary sewer maintenance after construction."

It is quite obvious that the Meadowbrook developers did desire, and in some manner, made that desire known to have New Haven officials, that New Haven agree to furnish sewer maintenance and sewage disposal service to the area in such manner as would satisfy the State Board of Health. It is thus a fair inference that, in some sense of the phrase, New Haven was requested to "take over" the Meadowbrook area sewers. But there is no evidence which warrants the inference that any developer, or sewer builder, offered New Haven any property interest of any kind in the sewers it had built or any right to continue to furnish and charge for sewage disposal service for either perpetually or for any specified term.

There is no substantial evidence of probative value from which the trial court could have found that there was, as New

Haven contends, a common law dedication of the sewers to New Haven by the builders' offer and New Haven's acceptance. ceptance.

Nor can we find anything in the recorded plats which would warrant a finding that there was a statutory "dedication of the sewers to New Haven." There are, quite obviously, dedications (by the plats) of utility easements for sewage purposes. But New Haven points to nothing which indicates a "dedication . . . to New Haven."

To support its contention of statutory dedication, New Haven relies on *Walmer* v. *Town of Bremen* (1934), 99 Ind. App. 186, 191 N. E. 175, as approved by the Indiana Supreme Court in *Smith* v. *State* (1940), 217 Ind. 643, 652, 29 N. E. 2d 786, 789. Both of those cases involve dedication by recorded instrument of streets "to the public." In *Walmer* we held that annexation by the town of Bremen constituted an acceptance of the dedication to the public.

Whatever may be the nature of utility easements[1] they are hardly dedicated to the public in the same sense as streets in a city or town. Nor is any analogy apparent between "acceptance" of street dedication by annexation and "acceptance" by a city or town of a dedication of land not within its boundaries. The authority of cities and towns and other subdivisions of the state "to receive donations and dedications of lands for public use" of which *Smith* v. *State, supra,* at 650, speaks would seem logically to be limited to lands within the boundaries of the city or town. Furthermore, it would appear that utility easements are primarily for the benefit of the lot owners and only incidentally for the utility. *Wischmeyer* v. *Finch* (1952), 231 Ind. 282, 107 N. E. 2d 661 (cited by New Haven for the proposition that the dedication was complete with the sale of the first lot and is binding on the purchaser of all lots). Appellee has pointed to language

---

1. See *Schneider* v. *Town of Princes Lake* (1969), 145 Ind. App. 67, 249 N. E. 2d 508.

in some of these plats which makes it quite clear that the utility easements are for the mutual benefit of the lot owners.

In view of what we have already said, we need not pass on appellees' contention that Ind. Ann. Stat. § 48-3939 (Burns 1963), now repealed and replaced by Ind. Ann. Stat. § 48-3963 (Burns 1972 Supp.), IC 1971, 19-2-7-16, provides the exclusive procedure by which New Haven could have acquired a protectable interest in sewers beyond its corporate limits.

Since there is no substantial evidence of probative value in the record to sustain a finding that plaintiff-appellant, City of New Haven, has any interest protectable by the equitable relief it seeks, it was not error for the trial court to dismiss the action on the motion of defendants-appellees.

The judgment is affirmed.

Sharp, J., and Staton, J., concur.

NOTE.—Reported in 287 N. E. 2d 575.